# United States Court of Appeals
## For the First Circuit

No. 02-1341

STEPHEN GRUNING,

Petitioner, Appellant,

v.

PAUL DIPAOLO,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella, Circuit Judge,

and Cyr, Senior Circuit Judge.

Robert L. Sheketoff, for appellant.
James J. Arguin, Assistant Attorney General, Criminal Bureau,
with whom Thomas F. Reilly, Attorney General, was on brief, for
appellee.

November 15, 2002

**TORRUELLA, Circuit Judge.**  This is an appeal from a judgment, dismissing petitioner-appellant Stephen Gruning's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2000).  Petitioner appealed below, and the district court issued a limited certificate of appealability ("COA") on the issue of whether the Massachusetts state court violated Gruning's constitutional rights when it refused to provide Gruning with exclusive access to the audio recording of his court-ordered psychiatric examination.  For the reasons stated below, we affirm.

## I.  Background[1]

On the morning of February 12, 1995, Gruning went to the apartment of his former girlfriend Rhonda Stuart.[2]  After breaking down her front door with a sledgehammer, Gruning shot Stuart, seriously wounding her, and fatally shot Richard Stuart, her brother, and Nelson DeOliveira, her boyfriend.  A jury sitting in Essex County Superior Court found Gruning guilty of armed assault with intent to kill Stuart, second degree felony-murder of Richard Stuart, manslaughter of DeOliveira, assault and battery by means of a dangerous weapon, entering a dwelling while armed and using force therein, and illegal possession of a firearm.

---

[1]  For a more detailed description of the circumstances leading up to petitioner's imprisonment refer to Commonwealth v. Gruning, 710 N.E.2d 621 (Mass. App. Ct. 1999).

[2]  This petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  Accordingly, we presume the facts as determined by the state court are correct.  28 U.S.C. § 2254(e)(1).

Following the trial, Gruning unsuccessfully raised various claims in the Massachusetts Appeals Court, including a constitutional challenge of the court's refusal to provide the defense with sole access to the recording of Gruning's psychiatric evaluation. The Supreme Judicial Court then rejected, without opinion, further appellate review of Gruning's claims. Commonwealth v. Gruning, 714 N.E.2d 825 (Mass. 1999). The United States District Court for the District of Massachusetts, acting on the recommendation of the magistrate judge, dismissed Gruning's habeas petition. Subsequently, the district court granted a COA on the issue of whether the trial court violated Gruning's constitutional rights when it denied him sole access to an audiotape of his court-ordered psychiatric examination.[3]

## II.  Standard of Review

The government argues that we should apply the Antiterrorism and Effective Death Penalty Act's (AEDPA) deferential standard as codified in 28 U.S.C. § 2254 (d)(1)-(2).[4]  However,

---

[3]  This court then denied Gruning's request to expand the COA.

[4]   AEDPA provides:

   (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

section 2254(d) does not apply to this petition because the state appellate court did not address Gruning's claim that his constitutional rights were violated when the trial court withheld the audiotape.[5]  See Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (stating that "AEDPA's strict standard of review only applies to a 'claim that was adjudicated on the merits in state court proceedings'" because "we can hardly defer to the state court on an issue that the state court did not address" (quoting 28 U.S.C. § 2254(d))).  Consequently, we review Gruning's claim de novo.  See id.

### III.  Audio Recording of Psychiatric Examination

Prior to trial, Gruning's counsel suggested that there might be an insanity defense.  Accordingly, the court allowed the

_____

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

[5]  Gruning challenged the constitutionality of denying him sole access to audiotape in his appeal to the Massachusetts Appellate Court, but the court's discussion of the psychiatric examination failed to address this issue:

> Psychiatric examination.  Conceding that Massachusetts
> case law is to the contrary, the defendant nonetheless
> claims that this court should adopt the dissenting view
> in United States v. Byers, 239 U.S. App. D.C. 1, 740 F.2d
> 1104, 1161-1172 (D.C. Cir. 1984) (Bazelon, J.,
> dissenting), that there is a constitutional right to
> counsel at the "confrontation" between the defendant and
> the psychiatrist.  We decline the invitation.

Gruning, 710 N.E.2d at 627 (citations omitted).

Commonwealth's motion for a psychiatric examination pursuant to Mass. R. Crim. P. 14(b)(2)(B) (2002). At Gruning's request, the examination was audio-recorded. The examining psychiatrist subsequently issued a report to the trial court as required by Mass. R. Crim. P. 14(b)(2)(B)(iii). The trial judge then ordered that the report be redacted to prevent disclosure of petitioner's privileged statements. Gruning requested that the judge release a copy of the audiotape only to the defense. Analogizing the recording to a psychiatric report, which Massachusetts law permits

a judge to release to <u>both</u> parties,[6] the trial judge denied Gruning's request for exclusive access to the tape.

Gruning argues that he and his attorney needed exclusive access to the audiotape to assist them in making the decision of whether Gruning should waive his privilege of silence. They claim that denying them sole access to the tape violated both petitioner's right against self-incrimination and his due process right to "the guiding hand of counsel at every step in the proceedings against him." <u>See</u> <u>Powell</u> v. <u>Alabama</u>, 287 U.S. 45, 69

---

[6] The law provides:

> (iii) The examiner shall file with the court a written psychiatric report which shall contain his findings, including specific statements of the basis thereof, as to the mental condition of the defendant at the time the alleged offense was committed. The report shall be sealed and shall not be made available to the parties unless (a) the judge determines that the report contains no matter, information, or evidence which is based upon statements of the defendant as to his mental condition at the time of or his criminal responsibility for the alleged crime or which is otherwise within the scope of the privilege against self-incrimination; or (b) the defendant files a motion requesting that the report be made available to the parties; or (c) during trial the defendant raises the defense of lack of criminal responsibility and the judge is satisfied that (1) the defendant intends to testify in his own behalf or (2) the defendant intends to offer expert testimony based in whole or in part upon statements of the defendant as to his mental condition at the time of or as to his criminal responsibility for the alleged crime. If a psychiatric report contains both privileged and nonprivileged matter, the judge may, if feasible at such time as he deems appropriate, make available to the parties the nonprivileged portions.

Mass. R. Crim. P. 14(b)(2)(B)(iii).

(1932). Gruning's arguments rely upon an expansive reading of Brooks v. Tennessee, 406 U.S. 605 (1972). In Brooks, petitioner successfully argued that a Tennessee statute requiring that a criminal defendant who wished to testify "do so before any other witnesses for the defense testify" violated the constitutional rights of criminal defendants. Id. at 612 (quoting Tenn. Code Ann. § 40-2403 (1955)).

The Brooks Court held that forcing the defendant to testify first, if at all, violated his privilege against self-incrimination because the rule penalized him for remaining silent at the close of the state's case by excluding him from the stand later in the trial. "Pressuring the defendant to take the stand, by foreclosing later testimony if he refuses, is not a constitutionally permissible means of ensuring his honesty. . . . It fails to take into account the very real and legitimate concerns that might motivate a defendant to exercise his right of silence." Brooks, 406 U.S. at 611-12. In addition, the Court held that the statute denied the defendant "the 'guiding hand of counsel' in the timing of [a] critical element of his defense" because the statute forced the defendant and lawyer to decide whether the defendant should testify "without an opportunity to evaluate the actual worth of their evidence." Id. at 612-13. Crucial to the Court's decision was the harshness of the penalty; if the defendant did not testify first, he could not testify at all. Id. at 612.

We can discern two arguments from petitioner's citation to Brooks. First, petitioner has a right to evaluate the evidence against him before deciding whether to waive his privilege against self-incrimination. Second, petitioner has a right to have his attorney evaluate the evidence and assist petitioner in making this decision. However, these rights to examine the evidence before waiving privilege are not without bounds, and "the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances--even though the defendant may not know the specific detailed consequences of invoking it." United States v. Ruiz, 122 S. Ct. 2450, 2455-57 (2002) (holding that the "Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant").

In the case before us, petitioner did not have a constitutional right to hear the audiotape before deciding if he wished to waive his privilege against self-incrimination. The Constitution does not "'require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights.'" Colorado v. Spring, 479 U.S. 564, 576-77 (1987) (quoting Moran v. Burbine, 475 U.S. 412, 422 (1986)). "Of course, the more information the defendant has, the more aware he is of the likely consequences of

-8-

a plea, waiver, or decision, and the wiser that decision likely will be. But the Constitution does not require the prosecutor to share all useful information with the defendant." Ruiz, 122 S. Ct. at 2455. "[A] suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." Spring, 479 U.S. at 577. Without hearing the audiotape, both Gruning and his attorney understood the nature of petitioner's right against self-incrimination "and how it would likely apply in general in the circumstances," thus satisfying constitutional requirements. See Ruiz, 122 S. Ct. at 2455.

Massachusetts law did give petitioner the opportunity to hear the audiotape before deciding whether petitioner should waive his privilege, conditioned upon allowing the prosecution access to the recording. The defense made the tactical decision to choose witnesses without listening to the tape, rather than to allow the prosecution access. We realize that the defense would prefer exclusive access to the evidence and that, from the defense's point of view, the mere possession of incriminating evidence by the prosecution creates a disadvantage for the defense. But the question we are concerned with is whether this disadvantage rises to the level of a constitutional infirmity, and we believe that this type of condition is not the type of coercion or compulsion

-9-

that the Fifth Amendment guards against.  See Spring, 479 U.S. at 572-74 (finding that defendant's "allegation that the police failed to supply him with certain information does not relate to any of the traditional indicia of coercion: 'the duration and conditions of detention . . . , the manifest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his power of resistance and self-control'" (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961))).  Allowing the prosecution to hear the audiotape was a mild condition, far removed from Fifth Amendment compulsion.  Gruning could have chosen both to listen to the audiotape and to invoke his privilege against self-incrimination.  The prosecution would have had possession of incriminating statements, but could not have used the statements in court unless the defense put the psychiatric evaluation into issue by having petitioner or his psychiatric expert testify.  Mass. R. Crim. P. 14(b)(2)(B)(iii).  Gruning's decision of whether or not to waive his privilege against self-incrimination was knowing and intelligent, and did not require the court to provide him sole access to the audiotape of his psychiatric examination.

### IV.  Conclusion

For the reasons stated above, we **affirm** the judgment of the district court and dismiss petitioner's application for a writ of habeas corpus.