UNITED STATES of America,
Plaintiff-Appellee,

v.

Wayman O. ADAMS,
Defendant-Appellant.

No. 87–1046.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 1987.

Decided Nov. 13, 1987.
Certiorari Denied Jan. 25, 1988.
See 108 S.Ct. 783.

William S. Mautner, Milwaukee, Wis., for defendant-appellant.

Melvin K. Washington, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, and POSNER, Circuit Judge, and WILL, Senior District Judge.[*]

BAUER, Chief Judge.

The defendant-appellant, Wayman O. Adams, seeks review of his convictions for conspiracy to receive, possess, conceal and dispose of stolen motor vehicles transported in interstate commerce between February 1, 1983 and July 15, 1986, in violation of 18 U.S.C. § 371, as well as aiding and abetting the interstate transportation of stolen motor vehicles in violation of 18 U.S.C. §§ 2 and 2312. Adams was sentenced to four months incarceration with a consecutive five-year probation term and $2,689 restitution.

Adams appeals his conviction contending that: (1) the government's preindictment delay caused him actual prejudice in defending his case; (2) a government witness should have been excluded as a sanction for the government's delay in providing the defendant with potentially exculpatory discovery material; (3) the trial court erred in limiting the testimony of one of defend-

---

[*] The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

ant's witnesses; (4) the government's evidence was insufficient to convict defendant of aiding and abetting in violation of sections 2 and 2313; and (5) the district court improperly instructed the jury. For the reasons that follow we reject each of the defendant's assertions and affirm his conviction.

## I.

### Preindictment Delay

■ Adams was charged in a three count indictment alleging that he was a member of a conspiracy to dispose of motor vehicles beginning on or about February 1, 1983 and continuing up to the date of the filing of the indictment on July 15, 1986. The government, however, concedes that the last substantive offense charged in the indictment occurred in January, 1984. The proffered explanation for delay in filing the indictment was acknowledged candidly by the Assistant United States Attorney in response to the defendant's Motion to Dismiss as follows:

> Quite frankly, the government concedes that the delay in the indicting of this case was caused in large part by practical considerations of limited resources and manpower in the United States Attorney's office and the need to prioritize this prosecution relative to other investigations and prosecutions in this office.

The defendant maintains that the government's delay prejudiced the defense of his case in violation of his due process rights by depriving him of important witnesses who would have testified on his behalf. During the two and one-half year period of delay, the principal suspect of the government's investigation, Thomas Laurenzi, died of a heart attack on March 2, 1985. It is the appellant's position that Laurenzi, his close friend and long time employer, would have exonerated him of the allegations that Appellant aided and abetted the stolen car operation being run by Laurenzi.

Additionally, Adams maintains that the death of his wife, Mildred Lanier, prior to trial, robbed him of the only witness capable of rebutting the government's evidence regarding an alleged confession given by the appellant at his home. Adams testified that his wife was suffering from cancer and therefore required a great deal of his attention. Thus, when two FBI agents came to his home to discuss stolen cars, Mrs. Adams protested that they couldn't take her husband to jail because she needed him to assist in her hospice. According to Adams, he told the agents that he did not want to be interrogated at his home, but answered their questions in a manner he felt they wanted to hear in order to get the agents to leave before Mrs. Adams was upset further. Adams testified that his wife periodically walked in and out of the room during the course of the interrogation and therefore heard portions of the questioning.

In contradiction to Adams's testimony, FBI Agent Charles Poplinger testified that Mrs. Adams never entered the room during the substantive portion of the questioning. Moreover, Poplinger testified that Adams requested that the agents keep their voices as low as possible to prevent Mrs. Adams from hearing what was transpiring. Poplinger also refuted Adams's testimony that the agents threatened to take him to jail if he refused to cooperate. Adams maintains that the FBI agents coerced involuntary and false admissions from him at his home. Moreover, he contends that only his deceased wife could have contradicted Agent Poplinger's assertions as to the confession and explain why appellant might have falsely admitted his involvement in the stolen car ring.

The threshold inquiry, however, is whether the appellant has met his burden of showing actual and substantial prejudice caused by the government's delay.[1] *United States v. Brock*, 782 F.2d 1442, 1443 (7th Cir.1986), quoting *United States v. Williams*, 738 F.2d 172, 175 (7th Cir.1984);

**1.** Because Adams failed to establish actual prejudice to his defense caused by the government's preindictment delay, we need not decide whether he also is required to demonstrate an improper government motive in order to establish a due process violation. *See United States v. Brock*, 782 F.2d 1442, 1443–44 n. 1 (7th Cir. 1986).

*United States v. Watkins,* 709 F.2d 475, 479 (7th Cir.1983). Adams naively speculates that if Laurenzi had been alive at the time of trial he would have exonerated the appellant by implicating himself as the kingbolt of the stolen car ring. Such conjecture embodies the rather fantastic assumption that the deceased would have proven so faithful and generous a friend as to act in utter contradiction to his own interest at a time which common sense and experience indicates produces extraordinary measures toward self-preservation. Indeed, there is little honor among thieves. Predictably, the appellant has failed to produce any tangible evidence in support of his contention.

While the appellant's arguments regarding his wife are less incredible, they are equally unsupported. Adams's contention that his wife was the only witness he could have called to contradict Poplinger's testimony ignores the fact that his own testimony attempted but failed to accomplish just that. Moreover, based upon Adams's own account of the questioning at his home, it is doubtful that his wife could have corroborated his version of the interrogation—at best, she was in and out of the room. Nor has the appellant produced any evidence demonstrating that his wife would have been able to present exculpatory information unrelated to the interview. Because the appellant has failed to meet his burden of establishing actual and substantial prejudice caused by the preindictment delay, we affirm the district court's ruling on this issue.

## II.

### Failure to Disclose Potentially Exculpatory Information

█ The appellant also challenges the district court's refusal to dismiss the charges against him or, in the alternative, to exclude the testimony of a government witness as a sanction for an alleged violation of his discovery rights. A government witness and co-conspirator named Paul Schumacher was interviewed by FBI agents ten days before commencement of trial on October 24, 1986. During the course of Schumacher's interview he indicated that he was aware of two different black males named "Wayman", but did not know either's last name. Additionally, Schumacher indicated he doubted that Wayman Adams was involved in the theft operation and denied giving Adams any money for the purchase of stolen automobiles.

The prosecutors failed to provide defense counsel with a copy of that statement until after the conclusion of the second day of trial but the day before Schumacher testified. After obtaining Schumacher's FBI report, the defendant was given an opportunity to recall an earlier witness in the event that the newly revealed information might require additional testimony. While the trial judge denied a defense motion to dismiss the case or to exclude Schumacher's testimony, he imposed a $100.00 sanction on the Assistant United States Attorney that was later withdrawn.

Adams now contends that *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963) dictated the suppression of Schumacher's testimony and therefore reversal of his conviction for failure to take such action. Such a position, however, cannot be sustained upon examination of the aforementioned precedent. Under *Brady,* "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.,* 373 U.S. at 87, 83 S.Ct. at 1196. *Brady,* however, involved the disclosure of potentially exculpatory materials only after the defendant's conviction and sentencing and therefore does not mandate pretrial disclosure. *See United States v. Ramirez,* 810 F.2d 1338, 1343 (5th Cir.1987); *United States v. Sweeney,* 688 F.2d 1131, 1141 (7th Cir.1982). Instead, "the appropriate standard to be applied ... is whether the disclosure came so late as to prevent the defendant from receiving a fair trial." *United States v. McPartlin,* 595 F.2d 1321, 1346 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). Although Adams's attorney received Schu-

macher's FBI statement after the second day of trial, he failed to recall a single witness despite the fact that he was given an opportunity to do so. Nor did he request a continuance or recess of the trial to make use of the newly disclosed information. Most significantly, however, defense counsel received the report prior to Schumacher's testimony, thus allowing cross-examination based upon all available information including that which might have been favorable to the defendant. We note also that despite merely alleging the government's misconduct the appellant has failed to mention any specific prejudice incurred as a result of the delay. Our review of the record clearly indicates that the defendant did, in fact, receive a fair trial.

After reviewing appellant's remaining contentions we find that they are equally without merit. The judgment of the district court is

AFFIRMED.