STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Kevin HARRIS, Defendant-Respondent.

Supreme Court

*No. 02–2433–CR. Oral argument February 11, 2004.—Decided June 8, 2004.*

2004 WI 64

(Also reported in 680 N.W.2d 737.)

WILCOX, J., concurs.

SYKES, J., took no part.

For the plaintiff-appellant-petitioner the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-respondent there was a brief by *Steven A. Koch* and *Seymour, Kremer, Nommensen, Morrissy & Koch, L.L.P.,* Elkhorn, and oral argument by *Steven A. Koch.*

¶ 1. JON P. WILCOX, J. The State appeals from a published court of appeals decision, *State v. Harris,* 2003 WI App 144, 266 Wis. 2d 200, 667 N.W.2d 813, which affirmed an order of the Walworth County Cir-

cuit Court, Michael S. Gibbs, Judge, granting the motion of the defendant, Kevin Harris (Harris), to withdraw his guilty plea to a charge of first-degree sexual assault of a child. The circuit court granted the defendant's motion for plea withdrawal on the basis that the State had violated his due process right to receive exculpatory evidence when it failed to disclose that the alleged victim reported being sexually assaulted by her grandfather on a different occasion.

## I. ISSUES

¶ 2. The issues on appeal are: 1) whether the State violated Harris's right to due process under the state and federal constitutions[1] by failing to disclose, before entering into a plea bargain with him, that the alleged victim reported being sexually assaulted by her grandfather on a different occasion; 2) whether this nondisclosure violated Wis. Stat. § 971.23 (2001–02),[2] Wisconsin's reciprocal discovery statute; and 3) whether Harris is entitled to withdraw his plea if either violation is present. We hold that the State did not violate Harris's right to due process because, pursuant to *United States v. Ruiz*, 536 U.S. 622 (2002), due process does not require the disclosure of material exculpatory impeachment information before a defendant enters into a plea bargain. However, we determine that B.M.M.'s allegation against her grandfather is the

---

[1] "This court has repeatedly stated that the due process clauses of the state and federal constitutions are essentially equivalent and are subject to identical interpretation." *State v. Hezzie R.*, 219 Wis. 2d 848, 891, 580 N.W.2d 660 (1998)(citing *Reginald D. v. State*, 193 Wis. 2d 299, 307, 533 N.W.2d 181 (1995)).

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

type of information the State was required to disclose pursuant to § 971.23(1)(h) because it constitutes evidence favorable to the accused whose nondisclosure undermines our confidence in the judicial proceeding. This information is favorable to the accused because it constitutes impeachment evidence that casts doubt on the credibility of the State's primary witnesses. The nondisclosure of this evidence undermines our confidence in the outcome of the judicial proceeding because Harris would not have pled guilty but for the nondisclosure of this evidence. We further hold that in order to comply with the mandate in § 971.23(1) that such information must be turned over within a reasonable time before trial, the State was obligated to disclose this evidence at a point when Harris would have had sufficient time to make effective use of the information. As Harris entered his plea bargain within two weeks prior to the date on which his trial was scheduled to commence, the State should have disclosed the suppressed evidence by at least this point in the proceedings in order for Harris to be able to effectively use it. Given that 1) the evidence of B.M.M.'s allegation was the type of evidence required to be disclosed under § 971.23(1)(h); 2) the State did not disclose this evidence within a reasonable time before trial; and 3) Harris would not have pled guilty but for this nondisclosure, Harris has demonstrated that a withdrawal of his plea is necessary to avoid a manifest injustice. Therefore, we affirm the court of appeals' decision.

## II. FACTUAL BACKGROUND

¶ 3. Harris is a 31–year-old man with an eighth grade education who has a history of serious mental illness. The State filed a criminal complaint against Harris on April 24, 2001, alleging that he had sexual

contact with B.M.M., a person who had not yet attained the age of 13, contrary to Wis. Stat. § 948.02(1), and violated the conditions of his bond on a previous matter, contrary to Wis. Stat. § 946.49(1)(a). The State further alleged that Harris was a repeat offender as to count one. *See* Wis. Stat. § 939.62(1)(c). Subsequently, the State filed an information on May 2, 2001, alleging the same. The complaint alleged that Harris touched six-year-old B.M.M. on her vaginal area over her clothing. The complaint also alleged that Harris admitted to Detective Ray Otto of the Elkhorn Police Department that on April 11, 2001, he had brought B.M.M. into his apartment and that he kissed her head and patted her on the leg but denied touching her in an inappropriate manner.

¶ 4. On May 2, 2001, Harris waived his preliminary hearing and pled not guilty to each of the two counts in the complaint. A jury trial was set for August 6–8, 2001. Harris filed a discovery demand with the court on May 30, 2001, whereby he demanded that the State provide, inter alia, "[a]ll exculpatory evidence . . . that could form the basis for further investigation by the defense."[3] On June 5, 2001, after substituting counsel, Harris changed his plea to not guilty by reason of mental disease or defect (NGI) and Judge James L. Carlson ordered a psychiatric evaluation. On July 11, 2001, the State gave notice to Harris that it intended to call up to two expert witnesses to testify as to reactive

---

[3] In his discovery demand, Harris also requested the following: 1) "All exculpatory evidence . . . that would tend to negate the Defendant's guilt;" 2) "All exculpatory evidence . . . that would tend to affect the weight and credibility of evidence used against the Defendant;" and 3) "All exculpatory evidence . . . that would extenuate, mitigate, or reduce the degree of the offense charged or the Defendant's punishment for the offense."

behaviors common among child sexual abuse victims.[4] Thereafter, on July 25, 2001, approximately two weeks before trial, the psychiatric evaluation not supporting his NGI plea, Harris entered into a plea agreement with the State. Harris agreed to plead guilty to count one (first-degree sexual assault of a child as a repeater) and the State agreed to dismiss and read in count two (bail jumping). In addition, the State agreed to dismiss and read in Harris's previous misdemeanors. There was to be a presentence investigation, and the State agreed to remain silent at sentencing, although Harris was free to argue. After conducting a plea colloquy, the court accepted Harris's plea of guilty to count one.

¶ 5. On September 21, 2001, Judge Carlson sentenced Harris to a 45–year term of imprisonment, composed of 30 years confinement and 15 years extended supervision. On April 30, 2002, Harris filed a postconviction motion to withdraw his guilty plea, which was amended on May 6, 2002. In his amended motion, Harris alleged that shortly after the sentencing hearing Assistant District Attorney Maureen Boyle, at the direction of District Attorney Phillip Koss, informed his trial counsel that the State had failed to disclose that B.M.M. had previously made an allegation that her grandfather had sexually assaulted her on two occasions. A copy of an Elkhorn Police Department case record that was appended to Harris's motion provided that on June 1, 2001, B.M.M. alleged that she had been sexually assaulted by her grandfather on or about

---

[4] Expert testimony "about the consistency of a sexual assault complainant's behavior with victims of the same type of crime" is commonly referred to as "*Jensen* evidence," in reference to our decision in *State v. Jensen,* 147 Wis. 2d 240, 432 N.W.2d 913 (1988). *See State v. Dunlap,* 2002 WI 19, ¶ 36, 250 Wis. 2d 466, 640 N.W.2d 112.

February 16–23, 2001. The document also recited that on June 8, 2001, the Walworth County Sheriff's Department conducted an audio and videotaped interview with B.M.M., wherein she provided details of the alleged assault. During the interview, B.M.M. alleged that her grandfather, while staying at her house, had awoken her on two occasions, licked his fingers, and touched the front of her vaginal area and "butt-crack" underneath her pajamas. Following the interview, B.M.M.'s mother was reluctant to have her father interviewed and expressed disbelief that he could have done such a thing. She also stated that the following Sunday, June 10, 2001, the family would be moving out of town.

¶ 6. Harris, relying on *Brady v. Maryland,* 373 U.S. 83, 86 (1963), and *State v. Sturgeon,* 231 Wis. 2d 487, 497, 605 N.W.2d 589 (Ct. App. 1999), asserted that the State's failure to disclose this evidence violated his constitutional due process right to all exculpatory evidence. The motion was heard before Judge Michael S. Gibbs on July 25, 2002. At the motion hearing, Harris argued that the State was required to disclose this information to him under *State ex rel. Lynch v. Circuit Court for Dane County,* 82 Wis. 2d 454, 463, 262 N.W.2d 773 (1978), and that its failure to do so required that Harris be allowed to withdraw his guilty plea under *Sturgeon.* Harris argued this evidence tended to negate his guilt and would have been admissible under *State v. Pulizzano,* 155 Wis. 2d 633, 456 N.W.2d 325 (1990).[5]

---

[5] In *State v. Pulizzano,* 155 Wis. 2d 633, 456 N.W.2d 325 (1990), this court created a judicial exception to Wisconsin's rape shield law, Wis. Stat. § 972.11(2), that allows a defendant to present evidence of a child's past sexual behavior if the defendant demonstrates that the evidence meets a five-part test and if the court determines that the State's interest in excluding

¶ 7. Specifically, Harris argued that B.M.M.'s allegation concerning her grandfather's assault could be the source of prior sexual knowledge. Harris noted that B.M.M.'s grandfather allegedly assaulted her on February 16 and 23 of 2001 and that the State alleged Harris assaulted B.M.M. on April 11, 2001. Further, Harris argued that given the fact B.M.M. did not report the assaults by her grandfather until June of 2001 and her family did not wish to prosecute her grandfather, it was possible that B.M.M. projected these assaults onto Harris. Moreover, Harris argued that such information would have been necessary to cross-examine the State's expert witnesses. Harris noted that B.M.M. had moved out of state and was now unavailable for him to examine. Finally, counsel for Harris put in an offer of proof that he (Harris) would not have entered into his guilty plea had the State complied with his discovery request and disclosed this information. Harris would testify that he pled guilty because he thought a jury would believe the word of a child and two experts over his statement without any other evidence supporting his case. Harris would also testify that he believed he would receive a much harsher sentence had he gone to trial.

¶ 8. The prosecutor argued that she did not disclose this evidence immediately because the investigation of B.M.M.'s grandfather was still ongoing. Apparently, the investigation was never completed because B.M.M. and her grandfather moved to Texas. Thereafter, the prosecutor stated that she simply forgot about the prior allegation but later found the paperwork after Harris was sentenced. Further, the prosecutor stated she did not believe that the evidence was exculpatory, as

the evidence is outweighed by the defendant's right to present it. *See Dunlap,* 250 Wis. 2d 466, ¶ 20.

it was not admissible under *Pulizzano* because B.M.M.'s allegations against Harris did not demonstrate that B.M.M. possessed an unusual level of sexual knowledge for a child of her age.

## III. PROCEDURAL POSTURE

¶ 9. The circuit court found that the State was required to disclose the disputed evidence because under *Brady,* "the Defendant has an absolute right to—absolute constitutional right to any exculpatory evidence which may lead to the investigation of finding further exculpatory evidence." The court also stated that it was undisputed that Harris was unaware of his constitutional violation until after he was sentenced. The court determined that Harris would not have pled guilty but for the constitutional violation because the disputed evidence might have been admitted under *Pulizzano.* Finally, the circuit court found that Harris did not receive a substantial benefit from the plea bargain and that he only pled guilty because he had no evidence to support his version of events. Therefore, the circuit court granted Harris's motion to withdraw his guilty plea. On September 30, 2002, the State filed a notice of appeal.

¶ 10. The court of appeals affirmed. The court of appeals stated that its decision in *Sturgeon* governed whether a defendant is entitled to withdraw a guilty plea when the State fails to disclose exculpatory evidence prior to a plea and that the United States Supreme Court's decision in *Ruiz* did not alter its analysis. *Harris,* 266 Wis. 2d 200, ¶¶ 11, 30. The court of appeals noted that under *Brady,* "[a] defendant has a constitutional right to all material exculpatory evidence in the hands of the prosecutor." *Harris,* 266 Wis. 2d 200, ¶ 32 (citing *Brady,* 373 U.S. at 87). The court of appeals

92

held that "the State violates the Constitution if it withholds the type of information that could form the basis for further investigation by the defense." *Id.,* ¶ 36. The court of appeals reasoned: "Here, the prosecution withheld evidence of a prior sexual assault. Thus . . . we hold that this evidence is potentially exculpatory and that it was within the exclusive control of the prosecution. As such, Harris has established a constitutional violation." *Id.* The court of appeals, relying on the factors stated in *Sturgeon,* 231 Wis. 2d at 502–04, ruled that Harris would not have pled guilty but for this constitutional violation. *Harris,* 266 Wis. 2d 200, ¶¶ 38–39, 45. The court of appeals also held that Harris established a violation of Wis. Stat. § 971.23(1)(h) because the State failed to disclose the potentially exculpatory evidence of B.M.M.'s prior sexual assault and rejected the State's argument that the statute simply codified the requirements of *Brady.* *Id.,* ¶ 46. Therefore, the court of appeals concluded that Harris demonstrated that a withdrawal of his guilty plea was "necessary to avoid a manifest injustice." *Id.,* ¶ 47.

## IV. DUE PROCESS CLAIM

¶ 11. The present appeal involves a motion to withdraw a guilty plea based on both constitutional and statutory grounds. We first address Harris's constitutional argument.[6] When a defendant seeks to withdraw a guilty plea on constitutional grounds, he must estab-

---

[6] While generally this court does not address constitutional issues if it can resolve the case on statutory grounds, the court of appeals' constitutional analysis contains several misstatements of the law. This court has not decided whether a portion of a court of appeals decision that is not discussed when the

lish all of the following: "(a) that a violation of a constitutional right has occurred; (b) that this violation caused him to plead guilty[7]; and (c) that at the time of his plea he was unaware of the potential constitutional challenges to the case against him because of the violation." *Hatcher v. State,* 83 Wis. 2d 559, 565, 266 N.W.2d 320 (1978). Having established the foregoing elements, a defendant may withdraw his guilty plea as a matter of right. *Id.* When applying this test, appellate courts review the underlying historical facts under the clearly erroneous standard but review questions of ultimate constitutional fact independently. *Sturgeon,* 231 Wis. 2d at 496.

¶ 12. In *Brady,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87.[8] The prosecutor has a duty to disclose this evidence although

opinion is overruled on other grounds is still precedential. *See State v. Gary M.B.,* 2004 WI 33, ¶ 44 n.1, 270 Wis. 2d 62, 676 N.W.2d 475 (Abrahamson, C.J., dissenting). Therefore, we address the constitutional issue presented in this case.

[7] We interpret the "cause" element of the test set forth in *Hatcher v. State,* 83 Wis. 2d 559, 565, 266 N.W.2d 320 (1978), to mean that a defendant must demonstrate that he would not have pled guilty but for the constitutional violation.

[8] As the United States Supreme Court has explained, the rule in *Brady v. Maryland,* 373 U.S. 83 (1963), is based on the right to due process at trial; "[i]ts purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *United States v. Bagley,* 473 U.S. 667, 675 (1985).

there has been no formal request by the accused. *Strickler v. Greene,* 527 U.S. 263, 280 (1999). Evidence is favorable to an accused, when, "if disclosed and used effectively, it may make the difference between conviction and acquittal." *United States v. Bagley,* 473 U.S. 667, 676 (1985). Evidence that is favorable to the accused encompasses both exculpatory[9] and impeachment[10] evidence. *Strickler,* 527 U.S. at 281–82 ("The evidence at issue must be favorable to the accused, *either because it is exculpatory or because it is impeaching*") (emphasis added); *Bagley,* 473 U.S. at 676 ("Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule.").[11] The Court has

---

[9] "Exculpatory evidence" is defined as "[e]vidence tending to establish a criminal defendant's innocence." *Black's Law Dictionary* 577 (7th ed. 1999).

[10] "Impeachment evidence" is defined as "[e]vidence used to undermine a witness's credibility." *Black's Law Dictionary* 578 (7th ed. 1999).

[11] The Court first recognized that impeachment evidence fell within the *Brady* rule in *Giglio v. United States,* 405 U.S. 150, 154 (1972). The Court held: "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Id.* (quoting *Napue v. Illinois,* 360 U.S. 264, 269 (1959)). The Court has since referred to this type of evidence as "exculpatory impeachment" evidence. *United States v. Ruiz,* 536 U.S. 622, 628 (2002).

In the present case, the undisclosed evidence is not directly exculpatory because the fact that B.M.M. had alleged being previously sexually assaulted by her grandfather does not, in and of itself, tend to negate Harris's guilt regarding the separate assault that B.M.M. alleged he committed. However, as discussed *infra,* this evidence could be used to challenge the credibility of the State's primary witnesses (B.M.M. and any *Jensen* experts), witnesses whose reliability would have been

indicated that there is no distinction between the two types of evidence that are "favorable to accused" for *Brady* purposes. *Strickler,* 527 U.S. at 280–82; *Bagley,* 473 U.S. at 676 ("This Court has rejected any such distinction between impeachment evidence and exculpatory evidence.").

¶ 13. In order to establish a *Brady* violation, the defendant must, in addition to demonstrating that the withheld evidence is favorable to him, prove that the withheld evidence is "material." *Giglio v. United States,* 405 U.S. 150, 154 (1972) (stating that "[a] finding of materiality of the evidence is required under *Brady*").[12] A *Brady* violation may occur under three circumstances: 1) if the prosecutor fails to disclose that the defendant was convicted on the basis of perjured testimony; 2) if the defendant makes no *Brady* request and the prosecutor fails to disclose evidence that is favorable to the defendant; or 3) if the defense makes a specific *Brady* request and the prosecutor fails to disclose the requested material. *Bagley,* 473 U.S. at 678–81.

---

determinative of Harris's guilt. Therefore, we believe that this evidence is material exculpatory impeachment evidence. Therefore, throughout the remainder of the opinion, we shall use the phrase "material exculpatory impeachment evidence" to refer to the particular type of evidence at issue in this case.

[12] Thus, *Brady's* disclosure requirements apply only to evidence that is favorable to the accused—exculpatory evidence and impeachment evidence—that is also material. The Court's decisions in *Strickler v. Greene,* 527 U.S. 263, 280 (1999), and *Bagley,* 473 U.S. at 676, demonstrate that *Brady's* disclosure requirements apply to material exculpatory evidence and material impeachment evidence. When referring to the type of evidence that is required to be disclosed under *Brady* generally, we use the phrase "*Brady* evidence."

¶ 14. While previously the standard for materiality varied depending upon the type of *Brady* violation, *see United States v. Agurs,* 427 U.S. 97, 103–07 (1976), the Court has since adopted a uniform standard for materiality governing all three categories of *Brady* violations: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley,* 473 U.S. at 682. Under this test, which is the same test for ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668 (1984):

> [T]he reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case. The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response.

*Bagley,* 473 U.S. at 683. *See also State v. DelReal,* 225 Wis. 2d 565, 570–71, 593 N.W.2d 461 (Ct. App. 1999) (recognizing the *Bagley* formulation of the materiality requirement).[13] As such, "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure

---

[13] The United States Supreme Court further elaborated on the requirement of "materiality" in *Kyles v. Whitley,* 514 U.S. 419 (1995). First, the Court explained: "[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted

was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler,* 527 U.S. at 281.

¶ 15.　The United States Supreme Court has summarized the three prerequisites for a *Brady* violation as follows:　"The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler,* 527 U.S. at 281–82. "Prejudice," as *Strickler* provided, encompasses the materiality requirement of *Brady* so that the defendant is not prejudiced unless " 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *Strickler,* 527 U.S. at 290 (quoting *Kyles v. Whitley,* 514 U.S. 419, 435 (1995)). Thus, "showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a *Brady* violation, without more." *Kyles,* 514 U.S. at 437. *See also Bagley,* 473 U.S. at 675 n.7 ("[A] rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor

---

ultimately in the defendant's acquittal." *Id.* at 434. Second, the Court remarked that the *Brady* requirement of materiality is not a sufficiency of the evidence test and thus it is not necessary to show that there would not have been enough inculpatory evidence to convict once the suppressed evidence is discounted. *Id.* at 434–35. Third, the Court stated that once there has been a showing of materiality sufficient to establish a constitutional violation, that error cannot be harmless. *Id.* at 436. Fourth, the Court noted that materiality must be assessed by considering the effect of all of the excluded evidence collectively. *Id.* at 436–37.

and would undermine the interest in the finality of judgments."). As one court explained: "[U]nder the Due Process Clause, prosecutors are required to disclose evidence that is material to either guilt or punishment. A defendant's request for *Brady* Material, however, does not require a prosecutor to wade through all government files in search of potentially exculpatory evidence." *United States v. Lov-it Creamery, Inc.*, 704 F. Supp. 1532, 1552 (E.D. Wis. 1989) (citations omitted).

¶ 16. Therefore, the court of appeals in the instant case misstated the law when it held that "the State violates the Constitution if it withholds the type of information that could form the basis for further investigation by the defense[,]" and that a constitutional violation occurs when the State refuses to disclose "potentially exculpatory" evidence. *Harris,* 266 Wis. 2d 200, ¶ 36. This court has previously cautioned that a defendant is not entitled to evidence beyond which the prosecutor is constitutionally or statutorily required to disclose. *State v. DeLao,* 2002 WI 49, ¶¶ 49–50, 252 Wis. 2d 289, 643 N.W.2d 480 (rejecting discussion of the court of appeals that suggested a defendant was entitled to all evidence he requested that fell outside the scope of statutory and constitutional requirements). As the United States Supreme Court has noted, "the Constitution does not require the prosecutor to share all useful information with the defendant." *Ruiz,* 536 U.S. at 629. Further, "[t]he mere possibility that an item of undisclosed information might have helped the defense . . . does not establish 'materiality' in the constitutional sense." *Agurs,* 427 U.S. at 109–10. Thus, the Constitution does not require the prosecutor to "allow complete discovery of his files as a matter of routine practice." *Id. See also Bagley,* 473 U.S. at 675 ("[T]he prosecutor is not required to deliver

his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."); *United States v. Coppa,* 267 F.3d 132, 143–44 (2d Cir. 2001) (criticizing the district court for ordering the prosecution to disclose all impeachment evidence in its possession to the defendant without regard to its "materiality"); *Lynch,* 82 Wis. 2d at 463–64 (recognizing that "[t]he constitutional right to a fair trial does not entitle a defendant to inspect the entire file of the prosecutor").

¶ 17. Harris claims that the State violated his constitutional right to *Brady* evidence by failing to disclose, before he entered his plea, that B.M.M. alleged that her grandfather had assaulted her. Therefore, Harris asserts that he is entitled to withdraw his plea under *Sturgeon.* We determine, in light of the United States Supreme Court's decision in *Ruiz,* that due process does not require the disclosure of material exculpatory impeachment information before a defendant enters into a plea bargain. In *Ruiz,* the Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Ruiz,* 536 U.S. at 633. However, Harris, following the rationale of the court of appeals in the instant case, *see Harris,* 266 Wis. 2d 200, ¶¶ 15–30, argues that the *Ruiz* decision is limited to the context of federal "fast track" plea bargaining.[14] We disagree.

---

[14] When defendants enter into a "fast track" plea bargain in federal court, they waive their right to indictment, trial, and appeal in exchange for a recommendation of a two-level downward departure from the applicable sentencing guidelines. *Ruiz,* 536 U.S. at 625.

¶ 18. The defendant in *Ruiz* was offered a "fast track" plea bargain after immigration agents found a significant amount of marijuana on her person. *Ruiz,* 536 U.S. at 625. The agreement required her to waive her right to impeachment information relating to government witnesses or any affirmative defenses, although the Government was still obligated to produce any information that established her factual innocence. *Id.* Ruiz rejected the agreement, but eventually pled guilty. *Id.* at 625–26. At sentencing, *Ruiz* unsuccessfully argued for the same sentence that the Government would have recommended under the agreement. *Id.* at 626.

¶ 19. On appeal, the Ninth Circuit ruled that "fast track" plea bargains were unlawful due to the waiver contained therein because the Constitution requires prosecutors to disclose impeachment evidence prior to the entry of a plea agreement and a defendant cannot waive this right. *Id.* In reversing, the United States Supreme Court stated: "[W]e have found no legal authority embodied either in this Court's past cases or in cases from other circuits that provides significant support for the Ninth Circuit's decision." *Id.* at 630. Thus, the Court held that there is no constitutional right to impeachment evidence prior to the entry of a plea bargain. *Id.* at 633.

¶ 20. Harris argues that *Ruiz* should be limited to its facts because the Court framed the issue very narrowly. Harris relies on the Court's statement that "[t]he constitutional question concerns a federal criminal defendant's waiver of the right to receive from prosecutors exculpatory impeachment material[.]" *Id.* at 628. We disagree that this single sentence limits *Ruiz* to its facts because the Court later framed the issue in much broader terms: "We must decide whether the

Constitution requires preguilty plea disclosure of impeachment information. We conclude that it does not." *Id.* at 629. Also, the holding of the Court was not phrased with any limiting language: "[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633.

¶ 21. Harris also asserts that much of the rationale underlying the Court's decision was premised on the unique context of federal "fast track" plea bargaining. While the Court did discuss such case specific factors as the pre-guilty plea safeguards in Federal Rule of Criminal Procedure 11, the obligation of the Government under the "fast track" agreement to provide the defendant with information establishing her factual innocence, and the need to protect the identity of federal criminal informants, *id.* at 631–32, these were not the only bases for the Court's decision. A close examination of the *Ruiz* decision reveals that the Court's holding was based primarily on the nature of impeachment evidence and the policy considerations underlying the *Brady* rule. For instance, the Court stated that the right to impeachment information is relevant to the fairness of a criminal trial, not whether a plea is voluntary. *Id.* at 629. The Court also reasoned:

> It is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant. The degree of help that impeachment information can provide will depend upon the defendant's own independent knowledge of the prosecution's potential case—a matter that the Constitution does not require prosecutors to disclose.

*Id.* at 630. The Court also emphasized that the Constitution does not require a defendant to be aware of all relevant circumstances surrounding his plea, noting that the Constitution "permits a court to accept a guilty plea . . . despite various forms of misapprehension under which a defendant might labor." *Id.* at 630. The Court then found it difficult to distinguish some of these "various forms of misapprehension" from a defendant's ignorance of impeachment material at the plea bargaining stage. *Id.* at 630–31.

¶ 22. Further, the Court remarked that the "due process considerations, the very considerations that led this Court to find trial-related rights to exculpatory and impeachment information in *Brady* and *Giglio,* argue against the existence of the 'right' that the Ninth Circuit found here." *Id.* at 631. The Court reasoned that any benefit to the defendant of such a right would be clearly minimal because of a defendant's limited knowledge of the government's case. *Id.* The Court also noted that such a right would undermine the interest of the government in "securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice." *Id.*

¶ 23. Therefore, neither the express holding nor the rationale of *Ruiz* was limited to the context of federal "fast track" plea bargaining. Indeed, several other courts have recognized that *Ruiz* stands for the proposition that a criminal defendant generally does not have a constitutional right to receive impeachment information prior to entering into a plea bargain. *See McCann v. Mangialardi,* 337 F.3d 782, 787 (7th Cir. 2003) (noting that while the Court in *Ruiz* held that "the Due Process Clause does not require the government to disclose impeachment information prior to the

entry of a criminal defendant's guilty plea," due process may require government actors to disclose evidence of a defendant's factual innocence before he enters into a guilty plea); *Gruning v. Dipaolo,* 311 F.3d 69, 73 (1st Cir. 2002) (recognizing that *Ruiz* held that the government is not constitutionally required to disclose material impeachment evidence prior to entering into a plea bargain); *United States v. Cottage,* 307 F.3d 494, 499–500 & n.5 (6th Cir. 2002) (recognizing that the Court in *Ruiz* held that "a defendant has no constitutional right to the disclosure of impeachment information before entering a plea agreement"); *United States v. Dyess,* 293 F. Supp. 2d 675, 688 (S.D.W.Va. 2003) (recognizing that the *Ruiz* decision forecloses any argument that a defendant is entitled to impeachment information under *Brady* and *Giglio* before entering a plea); *People v. Moore,* 804 N.E.2d 595, 598–600 (Ill. App. Ct. 2003) (holding that prosecutor did not violate defendant's due process rights when refusing to negotiate a plea bargain after the defendant requested the identity of a confidential informant because *Ruiz* established that defendants do not have a right to material impeachment information prior to entering into a plea agreement); *In re Brennan,* 72 P.3d 182, 186 (Wash. App. 2003) (rejecting petitioner's claim that plea was invalid because prosecutor failed to disclose evidence that could be used to impeach government witness at trial in light of the *Ruiz* decision that "rejected the Ninth Circuit's conclusion that the constitution requires prosecutors to make certain impeachment information available to defendants before pleading guilty"). We therefore hold, based on the United States Supreme Court decision in *Ruiz,* that due process does not

require the disclosure of material exculpatory impeachment information before a defendant enters into a plea bargain.[15]

## V. DISCOVERY STATUTE VIOLATION

¶ 24. However, *Ruiz* is not completely dispositive of the case before us, because unlike the defendant in *Ruiz,* Harris made a statutory demand for exculpatory evidence under § 971.23(1), which requires the prosecutor to disclose certain materials to the defendant within a reasonable time before trial. As will be discussed further below, a defendant making a statutory discovery demand may be entitled to material exculpatory impeachment evidence before he enters into a plea bargain if the plea bargain is entered into within the time frame when the prosecutor would have been statutorily required to disclose the information.

¶ 25. When a defendant seeks a plea withdrawal on non-constitutional grounds, he may withdraw his guilty plea after demonstrating that a withdrawal is necessary to avoid a "manifest injustice." *Hatcher,* 83 Wis. 2d at 564. When proceeding on this theory, "the defendant has the burden of proving grounds for withdrawal of his guilty plea by clear and convincing evidence." *Id.* The fact that the defendant has waived certain defenses by entering into a guilty plea is not

---

[15] The State asks us to go one step further and overrule the court of appeals' decision in *State v. Sturgeon,* 231 Wis. 2d 487, 605 N.W.2d 589 (Ct. App. 1999). We decline to do so. Today's decision is limited to the scope of material exculpatory impeachment evidence. We do not determine whether due process requires the disclosure of purely exculpatory information prior to a plea bargain.

dispositive: " 'The question on a motion to withdraw a plea is not whether the accused has waived his rights but whether he should be relieved from such a waiver.' " *Id.* at 565 (quoting *Brisk v. State,* 44 Wis. 2d 584, 588, 172 N.W.2d 199 (1969)). Harris argues he is entitled to withdraw his guilty plea as a result of the State's violation of the discovery statute. Determining whether the court of appeals correctly concluded that the State violated its discovery obligations requires the interpretation and application of the discovery statute to a given set of facts and presents a question of law subject to independent appellate review. *DeLao,* 252 Wis. 2d 289, ¶ 14.

¶ 26. Harris argues that the State violated § 971.23(1)(h).[16] This section provides:

(1) What a district attorney must disclose to a defendant. Upon demand, the district attorney shall, *within a reasonable time before trial,* disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it within the possession, custody or control of the state:

---

[16] Harris also contended at oral argument that the State violated Wis. Stat. § 971.23(1)(e). That section provides that a prosecutor must disclose "[a]ny relevant written or recorded statements of a witness named on a list under par. (d) . . . ." Wis. Stat. § 971.23(1)(e). Wisconsin Stat. § 971.23(1)(d) provides that the prosecutor must disclose "[a] list of all witnesses and their addresses whom the district attorney intends to call at trial." We agree that the State may have been obligated under § 971.23(1)(e) to disclose B.M.M.'s recorded allegation that her grandfather assaulted her. However, because this issue was not discussed in the parties' briefs and the record does not contain a copy of any witness list provided by the State, we decline to resolve this case on the basis of § 971.23(1)(e).

. . . .

(h) Any exculpatory evidence.

Wis. Stat. § 971.23(1)(h) (emphasis added).

██

¶ 27. The parties dispute whether the phrase "any exculpatory evidence" merely codifies the constitutional requirements of *Brady,* or whether the phrase requires the State to disclose a broader set of information to the defendant. However, both parties agree that at a minimum, § 971.23(1)(h) requires that a prosecutor disclose the type of information required under *Brady. See Sturgeon,* 231 Wis. 2d at 497 n.4. In other words § 971.23(1)(h) requires, at a minimum, that the prosecutor disclose evidence that is favorable to the accused if nondisclosure of the evidence undermines confidence in the outcome of the judicial proceeding.

¶ 28. Harris asserts that the undisclosed evidence was "favorable to the accused" because it was directly relevant to the credibility of B.M.M., as she could have projected her grandfather's assault onto him. Harris notes that the alleged assaults by her grandfather occurred shortly before Harris is alleged to have assaulted B.M.M., and B.M.M. did not report the assaults by her grandfather until after she had reported being assaulted by Harris. Harris argues this evidence would have created an inference that he was not guilty. Also, Harris claims that the undisclosed allegation was relevant to the credibility and reliability of any expert witness the State would have called because it established a previous source for B.M.M.'s sexual knowledge and reactive behaviors. According to Harris, because the evidence related to the credibility of the State's most influential witnesses, it was material, and there-

107

fore subject to disclosure. The State primarily argues that the undisclosed information is not material because it would not have been admissible, as it does not meet the *Pulizzano* exception to the rape shield law.

¶ 29.　The United States Supreme Court has recognized that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within [the *Brady*] rule." *Giglio*, 405 U.S. at 154 (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). The Court has stated that "[o]ur cases make clear that *Brady's* disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness." *Strickler*, 527 U.S. at 282 n.21.

¶ 30.　We agree with Harris that here, the undisclosed information is favorable to the accused because it casts doubt on the credibility of the State's primary witnesses and may have supported an inference that B.M.M. was projecting her grandfather's assaults onto Harris. The United States Supreme Court has noted that "there are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed . . . ." *Agurs*, 427 U.S. at 110. Here, the undisclosed information is not directly exculpatory in the sense that DNA evidence might be because the fact that B.M.M. had alleged being previously sexually assaulted by her grandfather does not, in and of itself, tend to negate Harris's guilt regarding the separate assault that B.M.M. alleged he committed. However, the evidence here constitutes impeachment information that could be used to challenge the credibility of witnesses whose credibility would have been determinative of Harris's guilt. *Giglio*, 405 U.S. at 154. Thus, the undisclosed information constitutes exculpatory impeachment evidence because it is relevant to

B.M.M.'s credibility and that of any expert the State may have called to provide evidence under *State v. Jensen,* 147 Wis. 2d 240, 432 N.W.2d 913 (1988), as it may have provided an alternate source for B.M.M.'s sexual knowledge and may have created the inference that B.M.M. projected the assaults perpetrated by her grandfather onto Harris. Because this evidence could have undermined the credibility of the State's most influential witnesses, this is one of those situations in which fundamental fairness dictates that the evidence should have been disclosed.

■■■

¶ 31. We also disagree with the State's argument that this evidence is not material because we determine that the State's nondisclosure of this evidence sufficiently undermines our confidence in the outcome of Harris's criminal proceeding. While the State argues at length that the undisclosed evidence is not material because it does not meet the *Pulizzano* test, we find this argument to be unpersuasive because the State never afforded Harris the opportunity to bring a *Pulizzano* motion in the first place. We need not determine whether the five factor *Pulizzano* test would have been met in this case because even if the test would have been met, the circuit court would still have been obligated to balance Harris's right to present the evidence against the interest of the State in excluding it. *See State v. Dunlap,* 2002 WI 19, ¶ 20, 250 Wis. 2d 466, 640 N.W.2d 112; *Pulizzano,* 155 Wis. 2d at 653–54. By failing to disclose B.M.M.'s prior allegation, the State denied Harris the opportunity to further investigate B.M.M.'s allegations and bring a *Pulizzano* motion. As the resolution of any *Pulizzano* motion would have required the circuit court to balance the competing interests involved, the prosecutor here should have disclosed the

evidence and let the circuit court determine its admissibility. As the United States Supreme Court has stated, "[b]ecause we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure." *Agurs,* 427 U.S. at 108. Further, Wisconsin courts have recognized that "[i]mpeachment evidence casting doubt on a witness's credibility is material and subject to disclosure." *DelReal,* 225 Wis. 2d at 571. *See also Tucker v. State,* 84 Wis. 2d 630, 641, 267 N.W.2d 630 (1978); *Loveday v. State,* 74 Wis. 2d 503, 516, 247 N.W.2d 116 (1976).

¶ 32. The State's argument is also contrary to the rationale utilized by the court of appeals in *DelReal.* In *DelReal,* the court of appeals determined that the State failed to disclose *Brady* evidence when the State failed to inform the defendant that it had performed gunshot residue swabbing on the defendant's hands prior to trial. *DelReal,* 225 Wis. 2d at 571. A postconviction investigation revealed that while the State had performed the swabbing, it had not tested the results. *Id.* at 569. At the behest of the defendant, the tests were performed and the results came back negative. *Id.* In addressing whether this evidence was relevant and material, the court of appeals reasoned:

> [T]he State failed to turn over evidence of an exculpatory nature; i.e., the State failed to disclose that swabbing had in fact been performed, which *would have provided DelReal the opportunity to have the swabs tested leading to a negative test result.* This was relevant, exculpatory evidence because the negative test result would have some weight and its tendency could have supplied a favorable inference of DelReal's innocence to the jury.

*Id.* at 571 (emphasis added). The court further noted that this evidence was relevant for impeachment purposes because it could have been used to attack the credibility of a police detective who testified that swabbing had not been performed. *Id.* at 573, 576. The court held that "[i]n the interest of securing a fair trial, DelReal was entitled to challenge the reliability of the police investigation and to challenge the credibility of Gomez." *Id.* at 575. Under the rationale set forth by the State in the present case, the defendant in *DelReal* would not have been entitled to the evidence that gunshot residue swabbing had been performed because the results had not been tested prior to trial.

¶ 33. In the interests of a fair proceeding, Harris was entitled to the opportunity to bring a *Pulizzano* motion to challenge the reliability of the State's expert witness and challenge the credibility of the victim. As the State failed to disclose B.M.M.'s allegation regarding her grandfather, Harris was never given the opportunity to make use of this exculpatory impeachment evidence. By failing to disclose this evidence, the State denied him a fair judicial proceeding.

¶ 34. We recognize that in the constitutional context, the *Brady* requirement of materiality is dependent upon whether the suppressed evidence undermines confidence in the outcome of the trial and that no trial took place here. However, as the Supreme Court stated when discussing how a reviewing court should evaluate a prosecutor's pretrial decision to not disclose evidence:

> The reviewing court should assess the possibility that such [prejudicial] effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would

111

have taken had the defense not been misled by the
prosecutor's incomplete response.

*Bagley,* 473 U.S. at 683. The State's argument requires
us to reconstruct how a hypothetical trial would have
proceeded and speculate as to how the jury would have
viewed the evidence. We decline to do so. The circuit
court accepted Harris's offer of proof that he pled guilty
only because of the relative strength of the State's case
and would not have pled guilty had this evidence been
disclosed. As Harris demonstrated that he would not
have pled guilty but for the nondisclosure of this
favorable evidence, we are satisfied that the nondisclo-
sure of the evidence sufficiently undermines our confi-
dence in the outcome of the proceeding. As such, the
State was under a statutory obligation to disclose
B.M.M.'s allegation after Harris made a statutory de-
mand for "any exculpatory evidence."

¶ 35. The next issue we must address is one of
timing. The statute requires the State to disclose cer-
tain materials demanded by the defendant "within a
reasonable time before trial." Wis. Stat. § 971.23(1).
The statute itself does not define what is a "reasonable
time before trial," and there are no cases that establish
a per se rule for what is "reasonable" under the statute.
However, we note that immediate disclosure is not
required under *Brady. See Coppa,* 267 F.3d at 143–44
(criticizing the district court for ordering prosecution to
disclose all impeachment evidence immediately upon
demand). What *Brady* does require is that the prosecu-
tion must disclose exculpatory evidence to the defen-
dant "in time for its effective use." *Id.* at 144. *See also
United States v. O'Hara,* 301 F.3d 563, 569 (7th Cir.
2002) (finding no *Brady* violation where the defendant

"had sufficient time to make use of the material disclosed"); *United States v. Grintjes,* 237 F.3d 876, 880 (7th Cir. 2001) ("*Brady* applies only where the allegedly exculpatory evidence was not disclosed in time for the defendant to make use of it.").

¶ 36. In the constitutional context, this "timing" requirement dovetails with the *Brady's* "materiality" requirement. *Coppa,* 267 F.3d at 142 (noting that "the prosecutor must disclose 'material' . . . exculpatory and impeachment information no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made"). Therefore, "[*Brady*] demands only that the disclosure not come ' "so late as to prevent the defendant from receiving a fair trial." '" *Grintjes,* 237 F.3d at 880 (quoting *United States v. Adams,* 834 F.2d 632, 634 (7th Cir. 1987) (quoting *United States v. McPartlin,* 595 F.2d 1321, 1346 (7th Cir. 1979))).[17]

¶ 37. However, *Brady's* timing requirements cannot be completely incorporated into § 971.23(1) because the statute requires that evidence be disclosed "within a reasonable time *before* trial." Wis. Stat. § 971.23(1) (emphasis added). *Brady,* on the other hand, "does not require pretrial disclosure." *Grintjes,* 237 F.3d at 880 (citing *United States v. Sweeney,* 688 F.2d 1131, 1141 (7th Cir. 1982)). *See also United States v. Reyes,* 270 F.3d 1158, 1166–67 (7th Cir. 2001)(same). Thus, in regard to the timing of disclosure, § 971.23 is broader than the constitutional requirements of *Brady.* While

---

[17] *But see State ex rel. Lynch v. Circuit Court for Dane County,* 82 Wis. 2d 454, 463, 262 N.W.2d 773 (1978)("The State must therefore disclose such material as soon as the state recognizes its exculpatory character.").

we cannot apply the *Brady* standard for determining when the timing requirement is satisfied, in light of statutory language that clearly requires pretrial disclosures, we do find *Brady's* initial formulation of the timing requirement to be useful. We hold that in order for evidence to be disclosed "within a reasonable time before trial" for purposes of § 971.23, it must be disclosed within a sufficient time for its effective use. Were it otherwise, the State could withhold all *Brady* evidence until the day of trial in the hope that the defendant would plead guilty under the false assumption that no such evidence existed.

¶ 38. The jury trial in Harris's case was set for August 6–8, 2001. He made his discovery demand on May 30, 2001, and pled guilty pursuant to the plea agreement on July 25, 2001. Thus, at the time Harris entered into his plea agreement, there were approximately two weeks until trial. As discussed previously, had B.M.M.'s allegations against her grandfather been disclosed, Harris would have brought a *Pulizzano* motion in order to admit the evidence. Also, because this evidence would have been used not only to challenge B.M.M.'s credibility, but also to challenge the credibility and reliability of the State's *Jensen* experts, Harris would have been required to secure experts of his own. Given the nature of *Pulizzano* evidence and the fact that the State was planning to call at least one expert witness to provide *Jensen*-type evidence, the State should have disclosed the suppressed evidence by at least this point in the proceedings in order for Harris to be able to effectively use it. We are satisfied that by the time Harris pled guilty, the State should have disclosed B.M.M.'s statement in order to meet the statutory requirement that such evidence be disclosed within a

reasonable time before trial. Thus, although we concluded under *Ruiz* that the specific type of evidence here was not required to be disclosed prior to Harris's plea bargain as a constitutional matter, we nonetheless conclude that the State was under a statutory obligation to disclose this evidence because § 971.23 requires *Brady* evidence to be disclosed "within a reasonable time before trial."

¶ 39. Finally, we address whether the State's violation of § 971.23(1)(h) entitles Harris to withdraw his plea. In *Hatcher,* this court delineated four circumstances in which a criminal defendant is entitled to withdraw his guilty plea in order to avoid a manifest injustice: 1) if he was denied effective assistance of counsel; 2) if the plea was not entered or ratified by the defendant or his agent; 3) if the plea was involuntary because it was entered without knowledge of the charge or potential sentence; or 4) if the State breached the plea agreement. *Hatcher,* 83 Wis. 2d at 564. However, we noted that this list was not exhaustive and stated that a defendant may be able to withdraw a plea on the grounds of manifest injustice in similar circumstances. *Id.* We believe that the circumstances here are sufficiently similar to those delineated in *Hatcher.* The common thread among the situations listed in *Hatcher* is that the defendant was deprived of a right guaranteed by the constitution, statute, or rule, and that deprivation induced the defendant to plead guilty. Here, the State violated the discovery statute by withholding material exculpatory impeachment evidence that, if admitted, would have raised serious questions about the credibility of the victim and the reliability of the State's expert witnesses. Aside from Harris's own version of events, this was the only existing material

evidence that was "favorable to the accused." The circuit court accepted Harris's postconviction offer of proof that he would not have pled guilty had this evidence been available to him. This court has previously determined that a prosecutor's violation of discovery statute, if prejudicial to the defendant, entitles the defendant to a new trial. *DeLao,* 252 Wis. 2d 289, ¶ 59. Here, the State's violation of the discovery statute prevented Harris from ever having a trial. Harris has demonstrated the State's discovery statute violation resulted in " 'a serious flaw in the fundamental integrity of the plea.' " *State v. Thomas,* 2000 WI 13, ¶ 16, 232 Wis. 2d 714, 605 N.W.2d 836 (quoting *State v. Nawrocke,* 193 Wis. 2d 373, 379, 534 N.W.2d 624 (Ct. App. 1995)). Under these circumstances, we believe it necessary to allow Harris to withdraw his guilty plea in order to prevent a manifest injustice.

## VI. CONCLUSION

¶ 40. To summarize, we hold that the State did not violate Harris's right to due process because, pursuant to the United States Supreme Court's decision in *Ruiz,* due process does not require the disclosure of material exculpatory impeachment information before a defendant enters into a plea bargain. However, we determine that B.M.M.'s allegation against her grandfather is the type of information the State was required to disclose pursuant to § 971.23(1)(h) because it constitutes evidence favorable to the accused whose nondisclosure undermines our confidence in the judicial proceeding. This information is favorable to the accused because it constitutes impeachment evidence that casts doubt on the credibility of the State's primary witnesses. The nondisclosure of this evidence undermines our confidence in the outcome of the judicial proceeding

116

because Harris would not have pled guilty but for the nondisclosure of this evidence. We further hold that in order to comply with the mandate in § 971.23(1) that such information must be turned over within a reasonable time before trial, the State was obligated to disclose this evidence at a point when Harris would have had sufficient time to make effective use of the information. As Harris entered his plea bargain within two weeks prior to the date his trial was scheduled to commence, the State should have disclosed the suppressed evidence by at least this point in the proceedings in order for Harris to be able to effectively use it. Given that 1) the evidence of B.M.M.'s allegation was the type of evidence required to be disclosed under § 971.23(1)(h); 2) the State did not disclose this evidence within a reasonable time before trial; and 3) Harris would not have pled guilty but for this nondisclosure, Harris has demonstrated that a withdrawal of his plea is necessary to avoid a manifest injustice.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 41. DIANE S. SYKES, J., did not participate.

¶ 42. JON P. WILCOX, J. (*concurring*). I write separately because I believe that the decision in *United States v. Ruiz*, 536 U.S. 622 (2002), properly interpreted, is not limited to impeachment evidence, but rather extends to both material impeachment evidence and material exculpatory evidence. While the majority of the discussion in *Ruiz* focused on impeachment evidence, the waiver contained in the plea agreement at issue in *Ruiz* contained not only a waiver of the right to impeachment evidence, but also a waiver of the right to evidence supporting any affirmative defense. *Ruiz*, 536 U.S. at 625. The majority in *Ruiz* specifically rejected

117

the notion that due process requires information regarding an affirmative defense to be disclosed prior to plea bargaining. *Id.* at 633.

¶ 43. Exculpatory evidence includes evidence that tends to support an affirmative defense. *See United States v. Agurs,* 427 U.S. 97, 98–99 (1976) (Although the court ultimately concluded that the evidence in question, supporting a theory of self-defense, was not material under its now-outdated definition of materiality, the Court never questioned the exculpatory nature of the evidence in question). An affirmative defense is defined as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the . . . prosecutor's claim, even if all allegations in the complaint are true." *Black's Law Dictionary* 430 (7th ed. 1999). Thus, by definition, evidence supporting an affirmative defense is exculpatory because it tends "to establish a criminal defendant's innocence." *Id.* at 577.

¶ 44. In addition, the United States Supreme Court has repeatedly held that exculpatory evidence and impeachment evidence are to be treated the same for purposes of *Brady v. Maryland,* 373 U.S. 83 (1963). *Strickler v. Greene,* 527 U.S. 263, 280–82 (1999). In *United States v. Bagley,* 473 U.S. 667, 676 (1985), the Court stated that there is no substantive difference between impeachment evidence and exculpatory evidence for *Brady* purposes: "This Court has rejected any such distinction between impeachment evidence and exculpatory evidence." Thus, it logically follows that if due process does not require impeachment evidence to be disclosed prior to a plea agreement, then due process does not require exculpatory evidence to be disclosed prior to a plea agreement.

¶ 45. The conclusion that due process does not require the disclosure of exculpatory evidence prior to a

118

plea bargain is also consistent with the very underpinnings of *Brady*. The Court has previously recognized that because the purpose of the *Brady* rule is to ensure a fair trial, there is no violation unless the government's nondisclosure of the evidence resulted in an unfair trial. *Agurs,* 427 U.S. at 108 ("[T]he prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial."); *Bagley,* 473 U.S. at 678 ("[S]uppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial."). Indeed, in his concurrence in *Ruiz,* Justice Thomas aptly remarked: "The principle supporting *Brady* was 'avoidance of an unfair trial to the accused.' That concern is not implicated at the plea stage regardless." *Ruiz,* 536 U.S. at 634 (Thomas, J., concurring)(quoting *Brady,* 373 U.S. at 87). *See also Matthew v. Johnson,* 201 F.3d 353, 361–62 (5th Cir. 2000) ("Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation.).[1]

---

[1] The Seventh Circuit has noted, despite the holding in *United States v. Ruiz,* 536 U.S. 622 (2002), that "it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea." *McCann v. Mangialardi,* 337 F.3d 782, 788 (7th Cir. 2003). However, this statement does not diminish the significance of *Ruiz's* holding with respect to exculpatory evidence relating to affirmative defenses. While evidence that actually establishes a defendant's factual inno-

¶ 46. Because I would hold, pursuant to *Ruiz,* that due process does not require the disclosure of material impeachment information *or* material exculpatory information prior to plea bargaining, I respectfully concur.

---

cence will necessarily be exculpatory, the converse is not true; not all exculpatory evidence *actually establishes* the factual innocence of the defendant. *See Black's Law Dictionary* 577 (7th ed. 1999) (defining exculpatory evidence as "[e]vidence *tending* to establish a criminal defendant's innocence") (emphasis added). I further note that the case at bar does not implicate this statement from *McCann* because here the State did not withhold evidence that actually established Harris's innocence.