COURT OF APPEALS
DECISION
DATED AND FILED

February 15, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1396-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF357

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOSEPH A. JOHNSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dunn County: ROD W. SMELTZER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Joseph Johnson appeals a judgment convicting him of possession of child pornography and an order denying his postconviction

motion. Johnson argues that the circuit court erred by denying his motion to suppress evidence of child pornography on his cell phone because that evidence was derived from his compelled statements and because no independent source for that evidence existed. Johnson also argues that he is entitled to a new trial based on: (1) a newly discovered log written by his extended supervision agent; (2) his trial counsel's failure to discover the log; and (3) the State's failure to disclose the log in discovery. We reject Johnson's arguments and affirm.

## BACKGROUND

¶2      Johnson was previously convicted of three counts of first-degree sexual assault of a child. In late July 2016, Johnson was on extended supervision for those convictions when his supervising agent, Denise Campbell, received an anonymous tip that Johnson possessed "smart" cell phones containing "possible child pornography" and that Johnson was in contact with a twelve-year-old boy. At that time, Johnson's rules of supervision prohibited him from possessing any cell phone not authorized by his agent. Campbell later testified that Johnson was not authorized to possess a cell phone with internet capabilities.

¶3      On July 26, 2016, after receiving the anonymous tip, Campbell went to Johnson's home and took him into custody for the suspected rules violation. Johnson and his fiancée subsequently turned over four cell phones to Campbell, three retrieved from Johnson's home and one from his vehicle. Three days later, on July 29, Campbell questioned Johnson at the Dunn County Jail, and he admitted that one of the phones might contain child pornography.

¶4      After receiving instructions from her supervisor, Campbell then provided the cell phones to Maloree Switlick, an investigator with the Menomonie Police Department. Switlick immediately applied for and obtained a warrant to

search the cell phones.  As relevant to this appeal, Switlick averred in her search warrant affidavit:

> 3. Denise Campbell stated it was brought to her attention by a reliable source that Joseph A. Johnson had more than one cell phone in his possession.  Campbell did a search of Johnson's residence and four cell phones were recovered and at least three of which have internet access capabilities. Johnson is not to be on the internet as part of his parole rules.  Johnson also admitted to contacting a 12-year-old boy.
>
> 4. Johnson has served 8 years in prison from 7/30/2004 to 8/12/2012 for First Degree Sexual Assault of a Child. Johnson was charged for inappropriately touching females between the ages of 6-11.  He was convicted in Clark County Court for three counts and 17 were read-in. Johnson is on Extended Supervision until 2020.
>
> 5. Campbell also stated Johnson admitted to possibly having child pornography on his cell phone from a while back.  Johnson told Campbell that the child pornography was not his, but if it's on the phone it would be from a friend who previously used the phone.

¶5    Before viewing data from the cell phones, Switlick interviewed Johnson at the jail.  Johnson agreed to speak with Switlick after being read *Miranda* warnings,[1] and he stated that the "large" Samsung phone was his primary cell phone and that he did not believe the phone contained any child pornography.[2] Switlick later reviewed data from Johnson's "Samsung Galaxy Note 4," and she discovered several suspected images of child pornography.  The State subsequently charged Johnson with six counts of possession of child pornography.

---

[1] *See **Miranda v. Arizona**,* 384 U.S. 436 (1966).

[2] Two of the four cell phones obtained from Johnson's possession were Samsung phones:  a Samsung Galaxy Note 4 and a Samsung TracFone.

3

¶6    Johnson moved to suppress all evidence and derivative evidence related to his statements to Campbell, arguing that they were compelled because he "was required by the terms of his extended supervision to provide a truthful and accurate description of his whereabouts and activities." As such, he contended that the probable cause for the search warrant was unlawfully based on his compelled statements. Johnson further argued that "there is no legitimate source wholly independent of [his] compelled statements" to Campbell and relied upon in the search warrant affidavit.

¶7    The circuit court held an evidentiary hearing on the suppression motion. Campbell testified that on July 20, 2016, she had received "an anonymous tip that [Johnson] was in possession of two or three cell phones; two of them which were smart phones which contained possible child pornography, and he was also in contact with a 12-year-old boy." When asked whether the anonymous source wished to remain anonymous, Campbell testified, "Yes. I didn't even get a name." Campbell further stated, however, that she was aware the source was "an acquaintance" of Johnson.

¶8    Campbell also testified that when she confronted Johnson at his home, he initially told her that he only had one flip phone—i.e., his TracFone—and he denied having any other phones. Once in custody, however, Johnson admitted to Campbell that there might be two additional phones in his home, and he described where to find the phones. Johnson's fiancée retrieved the two phones located in the home and provided them to Campbell. Johnson's fiancée also then informed Campbell that Johnson had "another big black cell phone." Campbell asked Johnson about that phone, but "he denied having it." Johnson's fiancée later found that black cell phone in Johnson's vehicle and provided it to Campbell. Johnson does not contest or dispute that the "big black cell phone" described by

4

his fiancée and found by her in his vehicle was the Samsung Galaxy Note 4 that ultimately contained child pornography.

¶9     Switlick also testified at the suppression hearing. She stated, among other things, that she researched Johnson's criminal history and relied on information provided by Campbell in order to draft the search warrant and affidavit. In particular, she stated that Campbell had told her she "received an anonymous—reliable anonymous tip," and Switlick learned that Johnson was not supposed to access the internet as a condition of his supervision.

¶10     Johnson did not testify or present any evidence at the hearing. Johnson did, however, file an affidavit after the hearing. Johnson averred, among other things, that when Campbell questioned him in jail, she provided him a statement form on which he could write a statement, and that form "indicated that I was required to be truthful and that any information I provided could not be used in criminal proceedings." Johnson further asserted that Campbell interviewed him approximately four times between his arrest and his interview with Switlick, and that each time "Campbell stated that I was required to be truthful and if not then I could be revoked."[3]

¶11     The circuit court denied Johnson's motion to suppress. The court found that an anonymous source had informed Campbell that Johnson had "pornographic materials on his … cell phones." The court also found that one of the phones "had been turned over by an independent source—I believe it was the

---

[3] When Campbell was asked whether she had informed Johnson during her interview with him on July 29, 2016, that "his extended supervision would be revoked if he decided to remain silent when law enforcement questioned him[,]" Campbell testified, "Absolutely not."

person that lived with Mr. Johnson at the residence ….” The court concluded that “when you take the totality of the information and how it was collected,” there was a sufficient independent source for the information that Johnson provided in his statements to Campbell.

¶12 Johnson subsequently pled no contest to one count of possession of child pornography, and the other five counts were dismissed and read in. The circuit court sentenced Johnson to four years’ initial confinement and five years’ extended supervision.

¶13 Johnson later filed a postconviction motion, renewing the arguments in his suppression motion. Soon thereafter, Johnson filed a supplemental postconviction motion. He asserted that he discovered a July 26, 2016 event log written by Campbell, which stated that Campbell “received info from agent Sandy Frigo who was informed [that Johnson] had two cell phones and was in contact with a 12[-]year[-]old boy.” Johnson argued that the log “clearly shows Agent Campbell was untruthful in her testimony,” and “that Agent Campbell did not have any prior information about child pornography other than compelled statements made by Mr. Johnson ….” He further contended that he should be granted a jury trial (and, impliedly, be allowed to withdraw his plea) because: (1) Campbell’s log was newly discovered evidence; (2) his trial counsel was ineffective for not discovering the log; and (3) the district attorney improperly failed to disclose the log.

¶14 The circuit court held a *Machner* hearing,[4] and Johnson’s trial counsel testified regarding his representation of Johnson, including his lack of

---

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

knowledge regarding the event log. No other witnesses testified. As relevant to this appeal, the court issued a written order granting Johnson's request to suppress his statements to Campbell, but denying his request to suppress his statements to Switlick or to suppress evidence obtained from the search warrant. In addition, the court denied Johnson's request for a trial in an oral ruling, concluding that Johnson's trial counsel was not ineffective and that the newly discovered evidence would not have changed the outcome of the case. Johnson now appeals.

## DISCUSSION

*I. Independent source and inevitable discovery doctrines*

¶15     Whether a violation of constitutional rights possibly warranting the suppression of evidence has occurred is a question of constitutional fact. ***State v. Reed***, 2018 WI 109, ¶51, 384 Wis. 2d 469, 920 N.W.2d 56. When presented with a question of constitutional fact, we will uphold the circuit court's findings of historical fact unless they are clearly erroneous. ***Id.*** We then independently apply constitutional principles to those facts. ***Id.***

¶16     The Fifth Amendment to the United States Constitution prohibits the State from using compelled testimony of a person on criminal supervision, and any evidence directly or indirectly derived from such testimony, in a subsequent criminal investigation. ***State v. Quigley***, 2016 WI App 53, ¶46, 370 Wis. 2d 702, 883 N.W.2d 139. A defendant seeking to exclude prior statements based upon his or her Fifth Amendment privilege must establish that the statements at issue are testimonial, compelled and incriminating. ***State v. Mark***, 2006 WI 78, ¶16, 292 Wis. 2d 1, 718 N.W.2d 90.

¶17    Johnson argues that his statements to Campbell were compelled, incriminating and testimonial.   In particular, he contends that his rules of supervision required that he inform Campbell of his activities and that he provide true, accurate and complete information in response to inquiries by Department of Corrections (DOC) staff.   Johnson further argues that the statement he wrote to Campbell on July 29, 2016, contained language stating that he

> must account in a truthful and accurate manner for my whereabouts and activities, and that failure to do so is a violation for which I could be revoked.  I have also been advised that none of this information, or any evidence derived therefrom, can be used against me in criminal proceedings.

¶18    In response, the State argues that Johnson failed to satisfy his burden of proving that his statements to Campbell were compelled.  The State contends that Johnson failed to present sufficient evidence during the suppression proceedings because he did not present his rules of supervision or his July 29, 2016 written statement and because he did not testify.  The State further contends that Johnson's posthearing affidavit was insufficient because it was not subject to cross-examination and because the circuit court made no findings regarding the affidavit.

¶19    Indeed, the circuit court did not make any findings related to Johnson's affidavit.   Nor did it determine what Johnson was instructed when providing his statements to Campbell and Switlick.   The court acknowledged Johnson's argument that his statements were compelled and that he was promised his statements would not be used in criminal proceedings, but the court nevertheless concluded that "there was [a] sufficient independent source of that information."   Consistent with the court's analysis at the suppression hearing, we

assume, without deciding, that Johnson's statements were compelled in violation of his Fifth Amendment privilege against self-incrimination.[5]

¶20    Johnson argues that his statements to Campbell, and any evidence derived from those statements, must be suppressed because the State failed to show that it obtained such evidence "from a legitimate source wholly independent of [his] compelled statements." Johnson contends that "Campbell would not have known there was child pornography on the phones without [his] statements to her." He further argues that the anonymous call "did NOT discuss anything about child pornography."

¶21    In response, the State argues that it would have inevitably discovered the child pornography on Johnson's phone because the State had enough information, independent of Johnson's statements, to establish probable cause for a warrant to search Johnson's phone. The State contends that Johnson's fiancée was an independent source establishing Johnson's possession of the phone that contained child pornography. The State also contends that the anonymous tip was an independent source for establishing that Johnson possessed additional phones in

_____

[5] In a footnote, Johnson argues that his trial counsel was ineffective for not submitting his rules of supervision and his affidavit into the record because "there was no evidence in the record of his rules and statement." We reject this argument. Campbell testified during the suppression hearing—while reading from Johnson's rules of supervision—that Johnson was required to "provide true, accurate, and complete information in response to the queries by the [DOC] staff." Campbell also testified that Johnson was given his rules of supervision. Thus, contrary to Johnson's arguments, the record contained evidence of his relevant rules of supervision.

In addition, even if trial counsel was deficient for not filing Johnson's affidavit before the hearing, such deficient performance was not prejudicial. *See **Strickland v. Washington***, 466 U.S. 668, 694 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). As we explain later, law enforcement would have inevitably discovered the child pornography on Johnson's phone without relying on Johnson's allegedly compelled statements.

violation of his rules of supervision, that he was in contact with a twelve-year-old boy, and that he possessed child pornography on one of his phones.

¶22   As an initial matter, the parties generally argue past each other on this issue, perhaps due, in part, to the nature of the circuit court's ruling. *See supra* ¶11. Johnson argues that the independent source doctrine does not apply, while the State argues that the inevitable discovery doctrine does apply.[6] These two doctrines are "related but distinct." ***State v. Anker***, 2014 WI App 107, ¶25, 357 Wis. 2d 565, 855 N.W.2d 483. Ultimately, for reasons we explain, we agree with both parties, which inures to the State's benefit. The independent source doctrine does not apply, but the inevitable discovery doctrine does apply and provides a basis for us to affirm.

¶23   To explain, "the independent source doctrine requires proof that the tainted evidence was *actually* discovered by independent and lawful means; that is, it was 'obtained independently from activities untainted by the initial illegality.'" ***Quigley***, 370 Wis. 2d 702, ¶51 (citation omitted). "As applied to circumstances where an application for a warrant contains both tainted and untainted evidence, the issued warrant is valid if the untainted evidence is sufficient to support a finding of probable cause to issue the warrant." *See* ***State v. Carroll***, 2010 WI 8, ¶44, 322 Wis. 2d 299, 778 N.W.2d 1. A search warrant

---

[6] We recognize that the State did not argue inevitable discovery to the circuit court and that the court, in turn, did not discuss the inevitable discovery doctrine. We may nonetheless consider the State's new argument seeking to uphold the court's decision. *See* ***Blum v. 1st Auto & Cas. Ins. Co.***, 2010 WI 78, ¶27 n.4, 326 Wis. 2d 729, 786 N.W.2d 78 ("[I]t is well-established law in Wisconsin that an appellate court may sustain a lower court's ruling 'on a theory or on reasoning not presented to the lower court.'" (citation omitted)). Moreover, we are not constrained to the circuit court's reasoning in affirming or denying its order. ***State v. Smiter***, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920 (2010).

affidavit provides probable cause for a search when, under the totality of the circumstances, it sets forth "a substantial basis for concluding that there was a fair probability that a search of the specified premises would uncover evidence of wrongdoing." *State v. Jackson*, 2016 WI 56, ¶79, 369 Wis. 2d 673, 882 N.W.2d 422 (citation omitted).

¶24 Here, the State discovered child pornography on Johnson's phone pursuant to a search warrant that contained tainted evidence—i.e., Johnson's statements admitting "to contacting a 12-year-old boy" and "to possibly having child pornography on his cell phone from a while back." The only relevant untainted allegations remaining in the affidavit are: (1) that Johnson possessed cell phones with internet capabilities in violation of his rules of supervision; and (2) that Johnson had previously been convicted of three counts of first-degree sexual assault of a child. The State does not argue, nor can we conclude, that probable cause existed to search Johnson's cell phones based solely on the untainted allegations in the search warrant affidavit. The evidence obtained from Johnson's phone was therefore not admissible under the independent source doctrine.

¶25 Under the inevitable discovery doctrine, however, "evidence obtained during a search which is tainted by some illegal act may be admissible if the tainted evidence would have been inevitably discovered by lawful means." *Id.*, ¶47 (citation omitted). For evidence to be admissible under the inevitable discovery doctrine, the State must prove, by a preponderance of the evidence, that it inevitably would have discovered the evidence sought to be suppressed. *Id.*, ¶66. The following factors may be considered as indicia of inevitability:

> (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the

> police misconduct; (2) that the leads making discovery inevitable were possessed by the government at the time of the misconduct; and (3) that prior to the unlawful search the government also was actively pursuing some alternate line of investigation.

*Id.*, ¶¶60, 66. These factors, however, are not "indispensable elements of proof." *Id.*, ¶66. Because the State argues that it would have had sufficient independent information to secure a search warrant for Johnson's Samsung Galaxy Note 4 cell phone, we first consider what lawfully obtained information could have been alleged in the State's search warrant affidavit.

¶26 Like the search warrant affidavit Switlick prepared, the State would have been able to allege that Johnson had previously been convicted of three counts of first-degree sexual assault of a child and that he was not authorized under his rules of supervision to possess a cell phone with internet capabilities. Such information was lawfully obtained through Switlick's independent research into Johnson's criminal history and through Campbell's personal knowledge of Johnson's rules of supervision.

¶27 The State would have also been able to allege that Johnson possessed a cell phone with internet capabilities in violation of his rules of supervision. Such evidence was lawfully obtained—independent of Johnson's statements—because although Johnson explicitly denied having the Samsung Galaxy Note 4 cell phone, Johnson's fiancée independently discovered that cell phone in Johnson's vehicle and provided it to Campbell.

¶28 Lastly, the State would have been able to allege that an anonymous source informed Campbell that Johnson: (1) possessed cell phones with internet capabilities; (2) possessed possible child pornography on his cell phones; and (3) was in contact with a twelve-year-old boy. Such information was lawfully

obtained and independent of Johnson's statements because Campbell received the anonymous tip before speaking to Johnson regarding these matters. Although Johnson argues that the anonymous tip "did NOT discuss anything about child pornography," Johnson ignores Campbell's testimony and the circuit court's corresponding factual finding to the contrary.[7] Campbell testified that she received an anonymous tip that Johnson's cell phones contained possible child pornography. The court similarly found that an anonymous source informed Campbell that Johnson possessed "pornographic materials on his … cell phones." Accordingly, the court's finding in that regard was not clearly erroneous.

¶29     When considering the totality of these allegations, a warrant-issuing judge would have been able to conclude that there was a fair probability a search of Johnson's cell phones would have uncovered evidence of wrongdoing—i.e., possession of child pornography. *See Jackson*, 369 Wis. 2d 673, ¶79. Again, Campbell learned from an anonymous source that Johnson possessed possible child pornography on his cell phones. That allegation is further buttressed by Johnson's prior convictions for first-degree sexual assault of a child, which demonstrate past sexual interests in children; by his possession of a cell phone with internet capabilities in violation of his rules of supervision; and by the overall reliability of the anonymous source.

¶30     Johnson argues that the anonymous tip, including the allegation of possible child pornography on his cell phone, does not support a finding of

---

[7] Indeed, we note that Johnson's argument in his reply brief against application of the inevitable discovery doctrine is largely based on the notion that Campbell never received this information from an anonymous tip but, rather, from another agent. This argument, which is based on Campbell's event log, fails for the reasons we provide below, and any reliance on it to gainsay Campbell's testimony in this regard likewise fails.

probable cause because it could not be corroborated without Johnson's compelled statements. We disagree. When evaluating hearsay information provided in a search warrant affidavit, a court may consider the veracity of the hearsay declarant as well as the basis for the declarant's knowledge. *State v. Romero*, 2009 WI 32, ¶¶19-20, 317 Wis. 2d 12, 765 N.W.2d 756. The State can demonstrate an anonymous declarant's veracity by establishing the reliability of the particular information furnished. *Id.*, ¶21. In particular, "[t]he reliability of the information may be shown by corroboration of details …." *Id.* "If a declarant is shown to be right about some things, it may be inferred that he [or she] is probably right about other facts alleged." *Id.*

¶31 Here, the State obtained sufficient corroborating evidence—independent of Johnson's statements—to establish the reliability of the anonymous source. Not taking into account the cell phones that Johnson admitted to possessing, Campbell was able to corroborate the anonymous tip that Johnson possessed a cell phone with internet capabilities because Johnson's fiancée independently discovered the Samsung Galaxy Note 4 phone in Johnson's vehicle and provided it to Campbell. Because the anonymous source was correct that Johnson possessed a cell phone with internet capabilities, a warrant-issuing judge would have been able to infer that the anonymous source was right about other facts alleged, including that Johnson possessed child pornography and was in contact with a twelve-year-old boy. *See id.* Moreover, the reliability of the anonymous source is further supported by Campbell's knowledge that the source was an acquaintance of Johnson.

¶32 Finally, we consider the relevant factors of the inevitable discovery doctrine in the context of this case. Again, the State had obtained sufficient evidence, through independent means, to establish probable cause for a search

warrant. Much of that evidence was obtained and known before Johnson made any of the statements at issue. Although the cell phone containing child pornography—i.e., the Samsung Galaxy Note 4—was first discovered in Johnson's possession after his initial statements to Campbell, Johnson denied possessing that phone, and Johnson's fiancée independently discovered the phone and turned it over to Campbell. The State therefore possessed the necessary leads to make discovery inevitable by the time it used Johnson's statements in the search warrant affidavit. Even if Johnson had not made any statements, a reasonable probability exists that the State would have recovered the cell phone at issue (which undisputedly had internet capabilities), obtained a search warrant, and discovered evidence of child pornography on that phone.

¶33    Although the State may not have shown that it was *actively pursuing* an alternate line of investigation—independent of the search warrant that was obtained—before searching the cell phone at issue, such a showing is not required for application of the inevitable discovery doctrine. *See **Jackson***, 369 Wis. 2d 673, ¶¶62, 65-66 (recognizing that inevitable discovery may still be established without showing an active pursuit of an alternate line of investigation). Campbell was actively investigating the anonymous tip prior to obtaining any statements from Johnson. Because the anonymous source stated that Johnson's cell phones might contain possible child pornography, it appears likely that Campbell would have still turned the Samsung Galaxy Note 4 over to Switlick if Johnson had not made any statements, and that Switlick would have obtained a warrant to search the phone. The State has therefore established, by a preponderance of the evidence, that it inevitably would have discovered the child pornography on

Johnson's phone. The circuit court did not err by denying Johnson's motion to suppress evidence obtained from his cell phone.[8]

## II. *Plea withdrawal claims*

¶34    Johnson next argues that he is entitled to a jury trial because: (1) his trial counsel was ineffective for failing to discover Campbell's event log; (2) the log constitutes newly discovered evidence; and (3) the State failed to disclose the log. Johnson seemingly fails to discern, however, that he must first withdraw his plea before he can proceed to trial. We nonetheless recognize that ineffective assistance of counsel, newly discovered evidence, and discovery violations may warrant plea withdrawal. *See State v. Harris*, 2004 WI 64, ¶39, 272 Wis. 2d 80, 680 N.W.2d 737 (recognizing a manifest injustice resulting from ineffective assistance of counsel or discovery violations); *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997) (recognizing a manifest injustice based on the existence of newly discovered evidence). Accordingly, we construe Johnson's arguments as seeking plea withdrawal, and we address them in turn.

¶35    Johnson argues that his trial counsel was ineffective for failing to investigate and to obtain the log in Campbell's file. He contends that because his suppression motion was based upon Campbell's statements, his counsel had a duty to review Campbell's file. Johnson further contends that if counsel had obtained

---

[8] Johnson seems to suggest, at various times in his briefing, that his statements to Campbell and Switlick, on their own, should have been suppressed. He fails, however, to distinguish those arguments from his main argument that the evidence obtained from the Samsung Galaxy Note 4 should be suppressed. He therefore has failed to develop those arguments, and we decline to address them further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments). We do note, however, that the circuit court granted Johnson's request to suppress his statements to Campbell in the written order following Johnson's postconviction motion.

the log, he could have impeached Campbell and proven that she did not have independent information regarding the presence of child pornography on his phone. Johnson argues that the log "clearly shows Agent Campbell was untruthful in her testimony" and that it "would have changed the outcome of the motion hearing because it showed that Agent Campbell was not told by the 'independent and anonymous witness' that Mr. Johnson possessed child pornography."

¶36 To demonstrate constitutionally ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89. We need not address both components of this inquiry if the defendant does not make a sufficient showing on one. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). In determining whether counsel's performance was prejudicial, we evaluate whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Sholar*, 381 Wis. 2d 560, ¶33 (citation omitted).

¶37 Contrary to the fundamental premise in Johnson's arguments, the newly discovered log does not establish that Campbell lied about the anonymous tip, nor does it contradict her testimony. Rather, it shows that Campbell received information from Agent Frigo that Johnson had two cell phones and that he was in contact with a twelve-year-old boy. As the State aptly observes, Campbell could have received information from both the anonymous source and Frigo, or some other reasonable explanation could have existed for the log entry. But because Johnson did not call Campbell as a witness at the *Machner* hearing to explain her log, he can only speculate as to whether Campbell lied at the suppression hearing. Without any evidence establishing that Campbell lied, and because the log is not

17

inconsistent with Campbell's testimony, Johnson has not demonstrated a reasonable probability that the result of his suppression motion would have been different if counsel had discovered the log. *See Sholar*, 381 Wis. 2d 560, ¶33. Johnson has therefore failed to show that his counsel's performance was prejudicial to his defense.

¶38    Johnson next argues that the log constitutes newly discovered evidence. Newly discovered evidence may warrant plea withdrawal if the defendant proves, by clear and convincing evidence, that: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *McCallum*, 208 Wis. 2d at 473. Upon proof of these four criteria, the circuit court must then determine whether "a reasonable probability exists that a different result would be reached in a trial." *Id.*

¶39    Johnson does not develop any argument regarding the four criteria for newly discovered evidence until his reply brief. Generally, we need not consider undeveloped arguments or arguments developed for the first time in a reply brief. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998); *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). Regardless, as we have already explained regarding Johnson's ineffective assistance of counsel claim, the log does not establish that Campbell lied during her testimony, nor does it contradict her testimony. Therefore, the discovery of Campbell's log does not establish a reasonable probability of a different result at the suppression hearing. *See McCallum*, 208 Wis. 2d at 473.

18

¶40   Finally, Johnson argues that the State violated WIS. STAT. § 971.23(1)(e) (2019-20),[9] and ***Brady v. Maryland***, 373 U.S. 83 (1963), by failing to disclose Campbell's log before the suppression hearing.  He contends that the log "would have made a difference" because it would have shown that his compelled statements were the only source of information that he possessed child pornography on his phone.

¶41   While Johnson's ***Brady*** arguments suffer from being undeveloped, we reject them on the merits in any event.  The timing requirements under WIS. STAT. § 971.23(1) and ***Brady*** both relate to the scheduled trial date, not suppression hearings.  *See **Harris***, 272 Wis. 2d 80, ¶¶36-37.  ***Brady*** requires that disclosure not come "so late as to prevent the defendant from receiving a fair trial," but it "does not require pretrial disclosure."  ***Harris***, 272 Wis. 2d 80, ¶¶36-37 (citation omitted).  Section 971.23(1), on the other hand, requires that evidence be disclosed "within a reasonable time before trial."  In other words, the evidence "must be disclosed within a sufficient time for its effective use."  ***Harris***, 272 Wis. 2d 80, ¶37.  "Thus, in regard to the timing of disclosure, § 971.23 is broader than the constitutional requirements of ***Brady***."  ***Harris***, 272 Wis. 2d 80, ¶37.

¶42   Johnson's jury trial was scheduled to begin on March 20, 2019.  Johnson, however, pled no contest on February 11, 2019—thirty-seven days before trial.  By pleading no contest rather than taking his case to trial, Johnson made any disclosure of the log unnecessary.  *See* WIS. STAT. § 971.23(1)

---

[9] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

(requiring disclosure "within a reasonable time before trial"). Moreover, had Johnson not pled, the State could have disclosed Campbell's log, even after February 11, and still provided Johnson with "sufficient time for its effective use"—i.e., filing another suppression motion. *See Harris*, 272 Wis. 2d 80, ¶37. Therefore, even under the broader timing requirements of § 971.23(1), Johnson's arguments fail. Moreover, as we have already explained regarding Johnson's ineffective assistance of counsel claim, Johnson has failed to show that he suffered prejudice without Campbell's log. *See Harris*, 272 Wis. 2d 80, ¶39 (allowing the defendant to withdraw his plea only where the State's violation of § 971.23(1) was prejudicial to the defendant).

¶43 In sum, the circuit court did not err by denying Johnson's suppression motion because the State would have inevitably discovered the child pornography on his cell phone. In addition, Johnson has failed to establish that he is entitled to withdraw his plea due to ineffective assistance of counsel, newly discovered evidence, or discovery violations.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.