COURT OF APPEALS
DECISION
DATED AND FILED

**January 27, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1883-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF1119

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

　　　　PLAINTIFF-APPELLANT,

　V.

REBECCA L. PINEDA,

　　　　DEFENDANT-RESPONDENT.

---

　　　　APPEAL from an order of the circuit court for Milwaukee County: MILTON L. CHILDS, SR., Judge. *Affirmed*.

　　　　Before White, C.J., Colón, P.J., and Geenen, J.

　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State of Wisconsin appeals from the order granting defendant Rebecca Pineda's motion for postconviction relief, vacating her conviction for felony theft and unauthorized use of personal identifying information, and allowing her to withdraw her no-contest pleas. The State argues that the circuit court erred when it granted postconviction relief to Pineda based on undisclosed impeachment information because (1) there are no ***Brady***[1] due process rights to discovery when resolving charges with a plea; and (2) the information was not material. We affirm the court's holding that manifest injustice occurred because material impeachment information was not disclosed in violation of the discovery statute, WIS. STAT. § 971.23 (2023-24).[2] Accordingly, we affirm the order for plea withdrawal.

## BACKGROUND

¶2 The charges against Pineda arose from her employment as an office manager at a Milwaukee restaurant, where she was hired in May 2016. In December 2016, the restaurant owner, Michael,[3] discovered financial improprieties arising from Pineda's duties and actions; Pineda was terminated. Michael then received an email purportedly from an attorney threatening to take the restaurant to court; however, when the attorney was contacted, he denied writing the email or representing Pineda.

---

[1] ***Brady v. Maryland***, 373 U.S. 83 (1963).

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

[3] We employ a pseudonym in accordance with WIS. STAT. RULE 809.86.

¶3 The complaint alleged that Pineda embezzled funds in five ways: (1) stealing currency that should have been deposited in the bank; (2) making unauthorized purchases on five credit cards stolen from the restaurant's safe; (3) writing unauthorized checks to pay her own tax and unemployment compensation liabilities; (4) inflating her paychecks by increasing her wages without her employer's consent; and (5) eliminating payroll taxes from her own paychecks. In March 2018, Pineda was charged with (1) theft by an employee in an amount exceeding $10,000, with the habitual criminality repeater penalty enhancer; (2) fraudulent use of a credit card between $5,000 and $10,000, with the habitual criminality repeater penalty enhancer; and (3) unauthorized use of personal identifying information to obtain anything of value or benefit, as a party to a crime, with the habitual criminality repeater penalty enhancer.

¶4 The record reflects that in June 2018, the trial court set a jury trial date for December 10, 2018.[4] Pineda's counsel requested additional time to review more than 10,000 pages of discovery. In September, Pineda requested the trial date be adjourned to accommodate witness investigation, discovery review, and a missing transcript, which resulted in a new trial date in January 2019. However, in November 2018, defense counsel learned that a member of the trial court's family had donated to Michael's prior aldermanic campaign fund, which had resulted in the court recusing itself from presiding over an earlier case where Michael was the defendant. The court explained that its relationship with Michael was not a social relationship, but because the court's judicial campaign and Michael's aldermanic campaign occurred at similar times and they were both at

---

[4] The Honorable Michelle Ackerman Havas presided over the initial proceedings against Pineda. We refer to Judge Havas as the trial court.

the same events, the trial court recused itself and the case was moved to the circuit court.[5]

¶5      A trial date was set for May 2019; however, in April, the trial was adjourned until September to accommodate evidentiary and personal issues.  In September 2019, Pineda informed the court she elected to resolve the case with a plea agreement on the scheduled trial date, then five days away.

¶6      During the plea hearing, the State recited the plea offer as Pineda paying $14,000 in restitution and pleading guilty to counts one and three, and the State would dismiss and read in count two.  The State would also recommend concurrent sentences with specific term lengths.  Pineda proceeded to offer no contest pleas, which although not originally planned, were acceptable to the State.

¶7      After the circuit court conducted a thorough colloquy with Pineda, the court accepted her no contest pleas and entered a judgment of conviction.  In February 2020, after ascertaining that the initial $14,000 restitution had been received, the court sentenced Pineda to concurrent sentences: for count one, a 7-year sentence divided as 2 years of initial confinement and 5 years of extended supervision; and for count three, a 4.5-year sentence divided as 1.5 years of initial confinement and 3 years of extended supervision.  An additional order of $13,997.39 in restitution was also entered.

¶8      By new counsel, Pineda moved for postconviction relief by first moving for release pending appeal in December 2020, which was granted by the

---

[5] The Honorable David A. Hansher presided over Pineda's plea and sentencing.  We refer to Judge Hansher as the circuit court.

postconviction court in April 2021, and then followed with a postconviction motion in August 2021.[6]

¶9 Pineda argued that after sentencing, she learned that the State did not disclose a connection and a conflict of interest between the lead investigator on the case, Milwaukee Police Department (MPD) Detective Dale Bormann, and Michael, the restaurant owner. Pineda asserted that when Michael ran for Milwaukee alderperson, Detective Bormann served as a trustee for the Milwaukee Police Association (MPA), which contributed to Michael's campaign. Detective Bormann appeared with Michael in certain campaign materials. He remained an MPA trustee when he was assigned to investigate this matter in January 2017. In April 2017, the MPA awarded Michael's restaurant a business appreciation award.

¶10 Pineda argued that Detective Bormann did not disclose any potential conflict of interest throughout these proceedings, despite serving as the State's witness in the preliminary hearing, and being present at nearly every hearing throughout the matter. Although Pineda informed the State about the conflict in March and June 2020, it took no action in response. Pineda contrasted this inaction to when the trial court recused itself from Pineda's case when it learned that a family member had contributed to Michael's campaign for alderperson.

¶11 Pineda alleged that Detective Bormann failed to investigate Michael's claims and instead took his complaints at face value. Michael's claims included that personal loans were not given to employees, Pineda was stealing cash from the restaurant that she should have deposited in the bank, Pineda was

---

[6] The Honorable Milton L. Childs, Sr. presided over Pineda's postconviction proceedings; we refer to Judge Childs as the postconviction court.

not authorized to use a business credit card, and Pineda changed her payroll withholding to inflate her wages. Pineda argued that the detective did not investigate evidence that would dispute each claim, specifically: that employees received gift cards for the holidays, correlating to the allegedly unauthorized credit card transactions; messages from Michael to Pineda directing her to purchase gifts for employees; the cash deposits were reduced by payouts to employees, as reflected in the restaurant's accounting system showing bill payment by cash and check; Michael's role approving payroll each week; and Pineda's tax status as an independent contractor, which meant the restaurant would not have paid payroll taxes on her wages and she was paid with a 1099 tax form. Pineda also alleges that the detective did not investigate allegations of drugs, prostitution, and cash handling during the restaurant's Friday fish fry. Pineda argued that a forensic accountant would need to examine the records to determine what happened.

¶12 In seeking postconviction relief, Pineda asserted she would suffer manifest injustice if she were not allowed to withdraw her plea, arguing (1) the State failed to disclose material impeachment information pursuant to ***Brady*** and WIS. STAT. § 971.23(1) resulting in a due process violation; and (2) ineffective assistance of counsel for failing to retain a forensic accountant and for stipulating to the facts in the complaint. Pineda argued that if she had known about the connection between Michael and Detective Bormann, she would not have entered no contest pleas and would have gone to trial.

¶13 After multiple days of a continued evidentiary hearing, the postconviction court issued a decision in August 2023.[7] The court determined that although Pineda failed to show deficient performance by counsel, which meant her ineffective assistance of counsel claims failed, she did prove the State deprived her of due process by withholding discovery. The court found that, based on *State v. Harris*, 2004 WI 64, 272 Wis. 2d 80, 680 N.W.2d 737, *Brady*, and WIS. STAT. § 971.23(1), the State failed to disclose material impeachment information arising out of the connection between Michael and Detective Bormann.[8] The court granted the postconviction motion, reversed the judgment of conviction, vacated her sentence, and granted her request to withdraw her pleas. The State now appeals. We will discuss additional facts in the postconviction court's findings and reasoning below.

## DISCUSSION

¶14 The State argues that the postconviction court's decision to grant plea withdrawal to Pineda was an erroneous exercise of discretion. The court's decision to permit plea withdrawal is ordinarily a matter of discretion. *State v. Cain*, 2012 WI 68, ¶20, 342 Wis. 2d 1, 816 N.W.2d 177. "We will uphold a discretionary determination by the [circuit] court as long as the court considered

---

[7] The postconviction court held an evidentiary hearing on Pineda's claims over multiple days in 2022 and 2023. The court heard testimony from Pineda's original counsel, who served until Pineda entered her plea; her second attorney, who served as her counsel at sentencing; Detective Bormann; Michael; a forensic accounting expert; and Pineda herself.

[8] We recite from the postconviction court's finding that Pineda "should have been made aware of the relationship and extent of the relationship between [Detective] Bormann and [Michael]. She should have been made aware that [Detective] Bormann was on the MPA board, when the association made a contribution … to [Michael's] campaign." For ease of reading, we will refer to the court's finding that the State violated its discovery disclosure obligations as the connection between Michael and Detective Bormann.

the facts of the record under the proper legal standard and reasoned its way to a rational conclusion." *State v. Terrill*, 2001 WI App 70, ¶8, 242 Wis. 2d 415, 625 N.W.2d 353.

¶15    "A defendant is entitled to withdraw a no contest plea after being sentenced upon a showing of manifest injustice by clear and convincing evidence." *State v. Denk*, 2008 WI 130, ¶31, 315 Wis. 2d 5, 758 N.W.2d 775. One way a defendant may show manifest injustice is to show the "defendant was deprived of a right guaranteed by the constitution, statute, or rule, and that deprivation induced the defendant to plead guilty." *Harris*, 272 Wis. 2d 80, ¶39.

¶16    The State makes two arguments.  First, the State argues that nondisclosure of a connection between Michael and Detective Bormann did not violate *Brady* because due process under *Brady* is generally a trial right that a defendant waives when a plea is entered.  Second, the State asserts that it did not violate WIS. STAT. § 971.23(1) because the connection between Michael and Detective Bormann was not material.

### I.    *Brady* and plea withdrawal

¶17    A due process violation occurs when the State does not disclose evidence favorable to the accused upon request, "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  However, "the Constitution does not require the [State] to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002).  "The constitutional question concerns a … criminal defendant's waiver of the right to receive from prosecutors exculpatory impeachment material—a right that the Constitution provides as part of its basic 'fair trial' guarantee." *Id.* at 628.

¶18   In *Harris*, our supreme court concluded that *Ruiz* bars plea withdrawal based on a violation of constitutional due process arising from undisclosed, material impeachment information.  *Harris*, 272 Wis. 2d 80, ¶¶22-23.  Accordingly, we agree with the State and conclude that Pineda is not entitled to plea withdrawal on the basis of a *Brady* issue.

¶19   However, we reject the State's characterization that the postconviction court's decision erred by relying on *Brady* for its findings.  The record reflects that the court relied upon *Harris*, which analyzed plea withdrawal to prevent a manifest injustice due to nondisclosure of material impeachment information in the context of *Brady*, *Ruiz*, constitutional rights, and the discovery statute, WIS. STAT. § 971.23.  *Harris*, 272 Wis. 2d 80, ¶¶23, 39.  Our examination of the court's decision shows that its analysis considered the proper standard of law.

¶20   We turn to the postconviction court's decision, in which the court acknowledged that *Brady* did not apply to the plea process.  However, the court analyzed Pineda's claims under *Harris*, which concluded that WIS. STAT. § 971.23(1) is broader than *Brady* regarding the timing of disclosures.  *See Harris*, 272 Wis. 2d 80, ¶37 (holding that applicable discovery "must be disclosed within a sufficient time for its effective use.  Were it otherwise, the State could withhold all *Brady* evidence until the day of trial in the hope that the defendant would plead guilty under the false assumption that no such evidence existed").

¶21   The postconviction court found that the September 2019 trial date was set in April 2019 and that the circuit court was only informed of Pineda's decision to enter a plea five days before that trial date.  The postconviction court concluded that under the facts and circumstances of this case, Pineda was in a trial

posture, and thus was preparing for trial, for four to five months, during which the State failed to disclose the relationship between Detective Bormann and Michael, despite its obligation under the discovery statute. Further, the court found that the record from the plea hearing was clear that Pineda was reluctant to enter her pleas, although she ultimately did.[9] The court's findings were not clearly erroneous. *See State v. Jenkins*, 2007 WI 96, ¶33, 303 Wis. 2d 157, 736 N.W.2d 24 (explaining that "we apply a deferential, clearly erroneous standard to the court's findings of evidentiary or historical fact" as well as credibility determinations).

¶22 We will discuss the application of WIS. STAT. § 971.23 to Pineda's postconviction motion below; nonetheless, we are confident that the postconviction court's decision did not rely improperly on *Brady*, and we conclude that the State's first argument fails.

## II. *Statutory discovery disclosures*

¶23 Wisconsin's discovery statute demands "at a minimum, that the prosecutor disclose evidence that is favorable to the accused if nondisclosure of the evidence undermines confidence in the outcome of the judicial proceeding." *Harris*, 272 Wis. 2d 80, ¶27. WISCONSIN STAT. § 971.23(1) sets forth the State's discovery obligation, stating: "[u]pon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant … and permit the

---

[9] Our examination of the record supports the postconviction court's findings about the plea hearing. When we review "the circuit court's decision to accept a plea … we may rely upon the entire record." *State v. Nash*, 2020 WI 85, ¶28, 394 Wis. 2d 238, 951 N.W.2d 404. The record reflects that the plea hearing was adjourned for a short time when Pineda was unsure about entering a plea and she was given time to discuss her options with counsel. Additionally, the State was unaware before the hearing of Pineda's decision to enter no contest pleas. The circuit court also clarified to Pineda that a no contest plea would only be to preclude possible civil ramifications if the restaurant sued her.

defendant … to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the [S]tate," with a list of nine types of information ending with a requirement for "[a]ny exculpatory evidence." Sec. 971.23(1)(h).

¶24 The State argues that statutory discovery obligations extend only to material information and the connection between Michael and Detective Bormann was not material because it did not bear on Pineda's guilt or innocence. We disagree. The credibility of a witness "may well be determinative of guilt or innocence," depending on a jury or court's "estimate of the truthfulness and reliability of a given witness[.]" *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

¶25 In the context of discovery disclosure obligations, "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Similar to a prejudice inquiry, "[a] 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* Impeachment evidence is material when it "could be used to challenge the credibility of witnesses whose credibility would have been determinative" of a defendant's guilt. *Harris*, 272 Wis. 2d 80, ¶30.

¶26 Pineda argues that the undisclosed evidence was material, and that the basic facts were undisputed: Detective Bormann was the lead investigator, he served as a trustee of the MPA, the MPA contributed to Michael's aldermanic campaign, there are photographs of Michael and Detective Bormann at a campaign event, and the MPA gave Michael a business award during the time Detective Bormann was investigating Michael's complaints.

¶27    The State argues that Detective Bormann testified at the evidentiary hearing that he did not recall meeting Michael and he did not draw any connection among Michael, the MPA, and himself.  Therefore, the State argues that Detective Bormann's investigation was not influenced by the alleged connection, he had no reason to disclose it or recuse himself, and the State did not violate its discovery obligations.    In contrast, Pineda asserts that the photographic evidence of Detective Bormann with Michael—a police endorsement of a political campaign—alone creates the appearance of a conflict of interest, bias, or impropriety.    She contrasts the detective's decision not to recuse himself or disclose the connection with the trial court's decision to recuse from the case because a member of the court's family donated to that same campaign, even as the court did not consider it a personal or social relationship.

¶28    Pineda argues that the impeachment information would further support Pineda's defense that the detective's investigation itself was insufficient, relying on Michael's complaints, instead of investigating the restaurant's processes in practice or performing any accounting verifying Michael's claimed losses.  The State acknowledges the connection information would provide a limited ability to impeach Detective Bormann, but argues that it would be meaningless in the broader context of the prosecution, which would rely on Michael's credible testimony.  The State asserts that even if Detective Bormann took Michael at his word, the question of Pineda's guilt could not have been established by the detective merely repeating Michael's statements because that would be hearsay.  The State contends that the connection evidence would not be material because the challenge would come down to Pineda's credibility versus Michael's credibility, not Pineda's credibility versus Detective Bormann's credibility.  However, the State ignores that the impeachment information would

undermine both Michael and the detective's credibility, as well as the investigation itself.

¶29     The State argues that it is beyond belief that any defendant would have gone to trial instead of pursuing a plea agreement on the basis of such tenuous and tangential impeachment evidence as presented here.  Pineda asserts that she would have gone to trial if the State properly disclosed this connection because the case hinged on Michael and Detective Bormann's credibility.  She contends that with material impeachment information to raise an inference that the investigation was compromised, she would have had a stronger defense.  She also asserts that with the propriety of the investigation at issue, trial counsel would have been motivated to pursue forensic accounting, which would have undermined Michael's claims.[10]

¶30     We conclude that the postconviction court's decision to grant plea withdrawal to Pineda was a reasonable exercise of discretion.  The court considered the relevant facts under the proper legal standard, and reached a rational conclusion that the State's failure to disclose the connection between Michael and Detective Bormann violated WIS. STAT. § 971.23(1).  *See Terrill*, 242 Wis. 2d 415, ¶8.  The evidence was material in that if it had been disclosed there was "a reasonable probability that … the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682 (citation omitted).  The evidence constituted impeachment information that "could be used to challenge the credibility of

---

[10] During postconviction proceedings, Pineda hired a forensics accountant who analyzed the records of the alleged thefts.  The accountant testified at the postconviction evidentiary hearing that there was no documentary evidence that Pineda stole cash, took funds, or used credit cards without authorization.

witnesses whose credibility would have been determinative of [Pineda's] guilt." *See **Harris***, 272 Wis. 2d 80, ¶30. Therefore, we conclude that Pineda has shown by clear and convincing evidence that it would be manifest injustice if she were not allowed to withdraw her pleas. *See **Denk***, 315 Wis. 2d 5, ¶31.

## CONCLUSION

¶31 For the reasons stated above, we reject the State's arguments and we affirm the court's order granting plea withdrawal.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.